# CHARLESTON.

K. S. LEITCH *v.* CHESAPEAKE & OHIO RAILWAY CO.

Submitted May 20, 1924.   Decided October 28, 1924.

1. MASTER AND SERVANT—*Railroad's Negligence in Maintaining Mail Crane Near Track, for Jury on Conflicting Evidence.*

   Where the facts are in dispute, and it does not appear that any federal law or regulation prescribes the distance mail cranes shall be located from the railroad track and equipment, the question whether or not the railroad company was negligent in maintaining a crane so near the track that a passing locomotive engineer while in the discharge of his duties was injured thereby, is for the jury to determine.   (p. 501).

2. SAME—*Assumption of Risk Generally for Jury.*

   Generally, the question whether plaintiff appreciated the dangers and risks of his employment and assumed them, is one for the jury.   (p. 502).

3. SAME—*Assumption of Risk Rule Stated.*

   The servant assumes all the ordinary risks of his employment, and also, as a general rule, all risks from causes which are known to him, or should be readily discernible by a person of his age and capacity, in the exercise of ordinary care.   (p. 505).

4. SAME—*General Practice Admissible on Question of Due Care, but Single Act of Particular Employers Inadmissible.*

   In determining whether or not the master has exercised ordinary care in providing a reasonably safe place for the servant to work, the general practice of employers in similar lines of employment is admissible in evidence, but a single act of each of two particular employers can not be introduced to show that the master has or has not exercised that degree of care which the law requires.   (p. 506).

5. INTEREST—*Interest From Date of Verdict Under Federal Employers' Liability Act May be Included in Judgment.*

   In actions in the courts of this state under the Federal Employer's Liability Act of Congress, it is not error to include in the judgment interest from the date of the verdict.   (p. 507).

Error to Circuit Court, Cabell County.

Action by K. S. Leitch against the Chesapeake & Ohio Rail-

way Company. Judgment for plaintiff and defendant brings error.

*Reversed; verdict set aside; case remanded.*

*Fitzpatrick, Brown •& Davis,* for plaintiff in error.
*George B. Martin, Rufus Dinkle* and *Holt, Duncan & Holt,* for defendant in error.

MILLER, JUDGE:

Plaintiff was a locomotive engineer in the employ of the defendant railway company, and while operating a locomotive engine attached to defendant's passenger train, between Hinton and Huntington, West Virginia, he was severely and permanently injured by striking his head against a mail crane erected by the defendant along the side of its right of way. The action was instituted under the Federal Employer's Liability Act of Congress. From a judgment for plaintiff, defendant obtained the present writ of error.

The act of negligence relied on is that defendant wickedly, carelessly, negligently and improperly maintained the mail crane injuring plaintiff in such close proximity to the passing engine in charge of plaintiff as to endanger the life, limbs and persons of the employees operating its trains, as a result of which plaintiff was injured.

The evidence shows that plaintiff had been in the employ of the defendant company in the capacity of a locomotive engineer for about eighteen years, and for the past two years had been engaged in passenger service over the same route on which he was injured. At the time of the accident the train he was hauling did not carry mail, but was followed by a mail train, running about fifteen or twenty minutes later, when both trains were on time. It appears that at times the first train did carry the mail car, and that plaintiff's run on this route included the operation of each of the two trains, sometimes he was on one, sometimes the other. At the time of the accident the postmaster, who was also the defendant's agent at Scary, the place where the mail crane was located, had orders from the Post Office Department to place the mail bag on the crane before the first of the two trains ran. The crane was located on the outside of a one-half of one degree

curve, and plaintiff's train had just entered this curve from a three degree curve turning in the same direction. The engineer's testimony is that he could not see ahead on this curve through the small window in the front of the engine cab, on account of the large boiler on the engine, and necessarily had to look from the side window. He had to observe a block signal 1157 feet ahead of the crane. He says he had about half of his face out of the window at the time his head struck the crane. David French, a civil engineer, and a witness for plaintiff, testified that he made measurements of the crane and track at the place of the accident, from which he ascertained, after being informed of the exact width of the engine cab, that the extreme point of the upper arm of the crane when extended to support a mail bag, was ten inches from the body of the cab and six inches from the edge of the wind shield placed on the outside of the cab just in front of the window. His measurements were made by dropping a perpendicular line from the extreme point of the upper arm of the crane when extended, but considering the side of the engine to be parallel to this perpendicular, without taking into account the fact that the railroad rail nearest to the crane was slightly higher than the other rail, due to the curve at that point. The defendant introduced in evidence the testimony of several witnesses who had made measurements from an engine of exactly the same type of the one operated by plaintiff at the time he was injured, by placing it on the track beside the crane. They found that the extreme point of the arm carrying the mail bag was fourteen or fourteen and one-half inches from the cab, and came to about the upper part of the engineer's chest.

The evidence further shows that the federal Postal Laws and Regulations, provide that: "At all points at which trains do not stop, where the postoffice department deems the exchange of mails necessary, a device for the receipt and delivery of mail satisfactory to the department must be erected and maintained," by the carrier; but Mr. Mayer, defendant's manager of mail and express traffic, says that the postal department has never undertaken to regulate the distance mail cranes should be set from the track. Measurements of the hooks on mail cars used to take

the mail from cranes show that they will receive mail bags
at a distance of twenty-six inches from the car; but here no
effort was made to show the width of a mail car, and whether
or not it is as wide as the engine cab on which plaintiff was
injured.   An examination of the hook on a car used on this
route tends to show that about ten inches of the outer end had
not come into contact with mail bags, from the fact that the
paint on that part of the hook had not been worn off; but this
proves nothing as to the crane in question, for there is no evi-
dence of the distance from the track of any other crane on
this route, or of any other crane on defendant's system.   It
further appears that mail bags are strapped closely together
at the middle, where the hook catches them, and that they
are hung three and three-eights inches back from the extreme
end of the crane.

Defendant contends that it was not negligent in maintain-
ing the crane at the distance from the cab that the evidence
shows it actually was located, and that, notwithstanding any
negligence it might be held guilty of, the plaintiff, as a matter
of law, assumed the risk, not only of all the dangers ordinarily
incident to his employment, but also the extraordinary risks
which he saw and appreciated, and those which were so ob-
vious that an ordinarily prudent person must have seen and
appreciated them.

On the question of negligence, from the facts in evidence,
we think this a case for jury determination.   While there
may not be much dispute as to the fact of the location of the
crane and its distance from the engine cab, the question of
defendant's duty to provide plaintiff a safe place in which to
work arises; and it is not the province of the court to say just
what distance from its trains equipment along the right of
way should be placed by the carrier in the exercise of due
care to its employees operating trains; and where, as in this
case, it does not appear that any federal law or regulation
prescribes the distance mail cranes shall be located from the
track, in view of the character of the evidence adduced on
the trial, we think it was within the province of the jury to
say whether or not defendant was negligent in maintaining
the crane where it was located by the railroad company.
Several reasons are suggested by the evidence why the ac-

cident might have occurred. Plaintiff says that just before reaching St. Albans, a few miles from the place of the accident, he broke a spring hanger on the right side of the engine. At St. Albans he got out and examined the broken hanger, but decided to continue the run to Huntington, a distance of about forty miles, though he knew that he could have secured another engine at St. Albans by reporting the condition of his engine to the company. The fireman on the engine says that several times he saw plaintiff looking down and out, as the witness thought, in an effort to see the broken hanger, though plaintiff says he could not see it from the cab window. Plaintiff says he knew the effect of a broken spring hanger. There is evidence that a broken hanger would cause the engine to lean toward the side of the broken part, but how much under any given condition does not appear. It is also said that an engine running at the rate of speed this train was traveling at the time of the accident, about thirty-five or forty miles an hour, would lean towards the outside of the curve, but there is no evidence to show how far it might lean. Plaintiff says his face was half out of the cab when he was injured; and the witness Stinnett, a locomotive fireman who was riding on the engine at the time, testified that plaintiff's face projected about four or six inches from the cab window. In view of this testimony of the only witnesses who saw the occurrence of the accident, and the fact that plaintiff actually was injured by the crane, we can not say that no negligence is shown.

But, we are asked as a matter of law to hold that defendant assumed the risk of danger, because he must have known of the existence of the crane and the dangers incident to passing it. Plaintiff says he knew in a general way the location of the crane, but did not know its exact distance from the engine. It is shown that he had made five trips within a year on the other train, which regularly took mail at this point, and that in the same time he had made twenty-five trips westward on the train he was hauling the day he was injured, but it is not shown how much of that time the mail bag was placed before the first train ran. When there was no mail bag on the crane, the arm was not extended, but was up and far from the engine. There is no evidence as to how far from the cab

other cranes on plaintiff's run were located, and it appears that they could have been located at a farther distance and at the same time close enough for the mail bag to be reached by the hook on the mail car. If, in fact, the crane causing the injury was closer to the engine than the other cranes, and it should appear that plaintiff, each day he made the run from Hinton to Huntington, passed a number of cranes, could it be said that he must know how far, in the discharge of his duties, he could extend his head at each particular crane without danger, when riding at a rapid rate of speed? We think not. Generally, the question whether plaintiff appreciated the dangers and risks of his employment, and assumed them, is for the jury to determine. *Griffith* v. *B. & O. R. R. Co.,* 96 W. Va. 302, 122 S. E. 912, 914.

Defendant relies mainly on the case of *Southern Pacific Company* v. *Berkshire,* 254 U. S. 415, where it was held that an experienced engineer who had been upon the same route for some years and had passed over it many times must be presumed to have known of the crane and that such a projection threatened danger and, knowing so much, he assumed the risk that obviously would attend the chances of leaning well out from the train. And it was there held, as a matter of law, that plaintiff assumed the risk. But in the opinion in that case the court says the evidence was to the effect that the crane doing the injury was the same distance from the track as all others along the road; that the uncontroverted evidence of the plaintiff's witnesses was that he leaned out considerably more then fourteen inches; that "in order to have uniformity the Post Office Department fixes the distance of the cranes from the equipment, and the length of the hooks;" and that the mail car was the same width as the engine cab. And it appears that the hook on the mail car would pick up a bag twenty-nine inches from the side of the car, while the crane in question was fourteen inches from the engine. Here none of these facts appear, except the distance of the crane from the cab, and evidence of the distance plaintiff put his head out of the window. We think the present case is clearly distinguished from the United States case by the facts stated in the opinion. In that case Mr. Justice

Clarke, Mr. Justice Day and Mr. Justice Pitney dissented on the question of assumption of risk.

At the instance of plaintiff the court gave to the jury the following instruction:

> "The court instructs the jury that when one enters a hazardous employment he assumes the ordinary risks thereof, but does not, either at common law or under the Federal Employer's Liability Act, assume risks created by his employer's negligence, unless he has knowledge, either actual or constructive, of such negligence, and an appreciation of the danger therefrom, and enters or continues in such employment under such circumstances. And the court instructs the jury that, if they find from the evidence in this case, that the defendant Railway Company did not use ordinary care to provide a reasonably safe place for the plaintiff to work at or in, but negligently constructed and maintained the mail crane involved in this suit unnecessarily and unreasonably close to its tracks and equipment, and as a direct result thereof plaintiff was injured thereby, and that, although the plaintiff knew in a general way the location of said crane, but did not know its actual distance from the tracks and equipment of the plaintiff and did not appreciate the danger incident thereto, then, and in that event, they will find for the plaintiff, and assess his damages at such an amount as will reasonably compensate him for his physical and mental injuries resulting therefrom, including pain and suffering, not to exceed $50,000.00. If, however, the jury should find that the plaintiff was guilty of contributory negligence, then and in that event, while contributory negligence would not defeat his right of recovery, the jury should reduce his damages in the proportion that his negligence bears to the whole negligence in the case."

This was the only instruction requested by plaintiff.

Defendant complains of that part of the instruction reading as follows: "And that, although the plaintiff knew in a general way the location of said crane, but did not know its actual distance from the tracks and equipment of the defendant, and did not appreciate the danger incident thereto,

then, and in that event, they will find for the plaintiff.'' On entering the service of the master, the servant assumes all the ordinary risks of such service, and also, as a general rule, all risks from causes which are known to him, or should be readily discernible by a person of his age and capacity, in the exercise of ordinary care. 9 Enc. Dig. Va. & W. Va. Rep. 695; *Id.* 4 Cum. Sup. 520, and numerous cases cited. See, also, the following federal cases: *Gila Valley Ry. Co.* v. *Hall,* 232 U. S. 94; *Butler* v. *Frazee,* 211 U. S. 459; *Seaboard Air Line* v. *Horton,* 233 U. S. 492, Ann. Cas. 1915-B. 475, note p. 481. The part of the instruction objected to leaves out of consideration the rule that the servant assumes risks of dangers so obvious that an ordinarily prudent person in the exercise of ordinary care must have appreciated them. Plaintiff's counsel contend that the instruction read as a whole covers this defect. The first sentence of the instruction does say, ''unless he has knowledge, either actual or *constructive,* of such negligence, and an appreciation of the dangers therefrom.'' But in a later part of the instruction, another sentence, the jury are told to find for the plaintiff if he ''knew in a general way the location of said crane, but did not know its actual distance from the tracks and equipment of the defendant, and did not appreciate the dangers incident thereto.'' This is the only statement of any particular evidential fact submitted to the jury by the instruction; and the only evidence on the question is the testimony of the plaintiff, that he knew in a general way where the crane was located, but did not know its distance from the track. This statement practically told the jury that if they believed the uncontroverted testimony of plaintiff on this question, they must find for him, and bound the jury to lack of knowledge of the ''actual'' distance. In *Bank* v. *Hannaman,* 63 W. Va. 358, it was held to be error to give an instruction based upon one particular fact in evidence to the exclusion of other material facts involved in the issue tried. 7 Enc. Dig. Va. & W. Va. Rep. 723, and cases cited. The part of the instruction objected to leaves out of consideration defendant's theory that plaintiff assumed the risk if the danger was so obvious that an ordinarily prudent person under the circumstances should have appreciated it, from *all* the evidence adduced on the

trial bearing on this issue. Whether plaintiff knew the "actual" distance of the crane from the track is not essential. The question for the jury was: Did the facts in evidence charge plaintiff with knowledge and appreciation of the danger? In view of the binding character of the latter part of this instruction, we do not think the word "constructive" used in the first part of the instruction, without explanation of what is meant by constructive knowledge in law, covers the alleged defect complained of. And we have held that a bad instruction is not cured by a good one properly stating the law of the case. *State* v. *Ringer*, 84 W. Va. 546. The jury might as readily be misled by an instruction, like the one here, covering several phases of the case, if one part appears to be binding on one question, though another part of the instruction may, by a general statement of the law, cover the same question. While we do not say that this instruction was such as to actually mislead the jury, since the case is to be remanded for a new trial on other grounds, we call attention to the possible danger of submitting it to the jury in its present form.

Over the objection of defendant the plaintiff was permitted to introduce evidence of the distance of one crane from the track of the B. & O. Railroad at Ceredo, W. Va., and one crane at Prichard on the N. & W. Railway. In *Bowles' Admr.* v. *Virginia Soapstone Co.*, 115 Va. 690, it is said: "In determining whether or not the master has exercised ordinary care in providing a reasonably safe place for the servant to work, the general practice of employers in similar lines of employment is admissible in evidence, but the act of a particular corporation or individual cannot be introduced to show that the master has or has not exercised that degree of care which the law requires in such cases." Besides, not even the general custom of the two other employers is in evidence, only an isolated instance on the lines of each. No evidence was offered to show custom anywhere. What one or two employers may consider to be due care does not set a standard for all other employers in the same business. 1 Wigmore on Evidence, §461; 3 Labatt on Master & Servant, §950; 1 White on Pers. Inj. on Railroads, 126. We think the admission of this evidence was prejudicial error.

Error is assigned on the part of the trial court in entering judgment for interest from the date of the verdict. Defendant insists that interest should run only from the date of the judgment. In *Wehrle* v. *Traction Co.*, 85 W. Va. 398, we held, point four of the syllabus: "In actions of tort the judgment should be for the amount found by the jury with interest thereon from the date of the verdict, as provided by section 16, chapter 131 of the Code. Overruling and correcting the error in *Easter* v. *Virginian Railway Co.*, 76 W. Va. 383." But it is said that the Federal Employer's Liability Act makes no provision for interest from date of the verdict, and that such interest can not be allowed even though the state statute, as construed by this court, so provides. In *Massachusetts Benefit Asso.* v. *Miles*, 137 U. S. 689, the Supreme Court of the United States said: "Section 966 R. S., while providing only for interest upon judgments, does not exclude the idea of a power in the several States to allow interest upon verdicts, and where such allowance is expressly made by a State statute, we consider it a right given to a successful plaintiff, of which he ought not to be deprived by a removal of his case to the Federal court. The courts of the State and the Federal courts sitting within the State should be in harmony upon this point." There the action was begun in the state court, but was removed, on motion of defendant, to the Circuit Court for the Eastern District of Pennsylvania. The Supreme Court also held that the question of interest is always one of local law. *Holden* v. *Trust Co.*, 100 U. S. 72; *Ohio* v. *Frank*, 103 U. S. 697. In view of these Federal decisions, we are of opinion that the inclusion of interest from the date of the verdict was proper.

Our conclusion is to reverse the judgment of the circuit court, set aside the verdict of the jury, and remand the case for a new trial.

*Reversed; verdict set aside; case remanded.*