# CHARLESTON.

KELLY WEBB v. THE CHESAPEAKE & OHIO RAILWAY COMPANY

(No.6088)

Submitted May 8, 1928.     Decided May 15, 1928.

1. MASTER AND SERVANT—*In Action Under Federal Employers' Liability Act for Injury Arising From Fellow Employee's Single Negligent Act Creating Sudden Emergency, Defense of Assumption of Risk is Inapplicable (45 USCA §§ 51–59).*

   In an action under the Federal Employers' Liability Act the defense of assumed risk is inapplicable when the injury arises from a single act of negligence of a fellow employee creating a sudden emergency without warning to the plaintiff or opportunity to judge of the resulting danger.   (p. 556.)

2. EVIDENCE—TRIAL—*Expert Witnesses' Testimony is Not Conclusive, and Does Not Necessarily Destroy Credibility of Other Testimony; Jury Has Right to Weigh Testimony of All Witnesses, Experts and Otherwise; Same Rule Applies As to Weight and Credibility of Experts' Testimony As Applies to Other Testimony.*

   The testimony of expert witnesses on an issue is not exclusive, and does not necessarily destroy the force or credibility of other testimony.   The jury has a right to weigh the testimony of all witnesses, experts and otherwise; and the same rule applies as to the weight and credibility of such testimony.   (p. 561.)

   (Evidence, 22 C. J. §§ 823, 828 ; Trial, 38 Cyc. p. 1518.)·

3. APPEAL AND ERROR—DAMAGES—*In Personal Injury Cases, no Rule of Law Fixes Measure of Damages; Measure of Damages for Personal Injury is to be Left to Sound Discretion and Judgment of Impartial Jury; Verdict for Personal Injuries Will Not be Disturbed Except on Showing That by Partiality or Prejudice Jury Was Misled by Mistaken View of Merits; $10,000 for Injury to Head of Railroad Section Hand, Causing Permanent Disability, Held Not Excessive (Federal Employers' Liability Act [45 USCA §§ 51–59]).*

   In personal injury cases there is no rule of law fixing the measure of damages, but that is a matter to be left to the sound discretion and judgment of an impartial jury, whose

verdict will not be disturbed unless it appears that they have been influenced by partiality or prejudice, or have been misled by some mistaken view of the merits of the case.  (p. 561.)

(Appeal and Error, 4 C. J. §§ 2846, 2847; Damages, 17 C. J. §§ 181, 409.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

MILLER and LIVELY, JUDGES, absent.

Appeal from Circuit Court, Raleigh County.

Action by Kelly Webb against the Chesapeake & Ohio Railway Company.  Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Fitzpatrick, Brown & Davis* and *C. W. Strickling,* for plaintiff in error.

*C. M. Ward* and *D. D. Ashworth,* for defendant in error.

WOODS, JUDGE:

This action is brought under the Federal Employers' Liability Act by Kelly Webb for an injury sustained by him while in the employ of the defendant railway company by reason of the alleged negligence of a fellow employee.  Judgment for the plaintiff for $10,000.00, and defendant brings error.

On the morning of September 1, 1925, while the section crew was engaged in track repair and maintenance work near Dorothy, Raleigh county, the foreman called plaintiff, a member of said crew, from the place where he and Massey were tamping ties, and conducted him a short distance east to the point of the accident for the purpose of having a certain tie removed and replaced—the tie in question being the second east of the one which Richmond, another employee, was then engaged in tamping.  The railroad at this point was elevated some ten or twelve inches above the surface of the ground, and, at the time of the injury, plaintiff was standing on the ground on the south side of the track, facing north.  When plaintiff began shoveling the ballast away from the west edge of the head of the tie—that is, from that portion which extends beyond the rails—Richmond was still tamping the quar-

ter, the portion of the tie between the rails. Richmond was standing between the rails just west of the tie he was tamping, and a little more than four feet west of plaintiff. Plaintiff had removed possibly three shovelfuls of ballast from the head of his tie, when Richmond, who upon finishing tamping the quarter stepped over the rail for the purpose of tamping the head of the tie on the side plaintiff was working, and without looking up raised his pick and brought the tamping point of the same down on plaintiff's head, thereby felling the latter to the ground, and rendering him unconscious for a few minutes. Plaintiff was directed to go to the doctor some two miles distant to have his wound dressed. Prior to the injury he was strong and healthy and able to perform the hardest kind of labor for the defendant company. Since the accident he has lost weight and has continuously suffered with headache and dizziness, and has been unable to perform any labor. It is admitted on the record that the defendant railroad is engaged in interstate commerce.

The first point stressed is that there was no evidence of negligence on the part of the railway company or any of its employees or agents. Both Webb and Richmond testified as to their relative positions and movements prior to and at the time of the accident. Webb showed where Richmond was working at the time he passed around him and began to remove the ballast from the head of the tie, which he had been instructed to remove. He further testified that the shoveling of the blue limestone ballast made noise enough to have warned Richmond of his presence. Richmond explains that when he had finished tamping the quarter that he stepped over (outside) the rail, and, without looking, began to swing the pick to tamp the head, and in doing so that he struck the plaintiff on the head on the first or second lick. The employee may assume that the employer, or his agents or servants, have exercised proper care with respect to his safety. Such is the rule laid down in *Chicago, Rock Island & Pac. Ry. Co.* v. *Ward*, 252 U. S. 18, and *DeAtley* v. *C. & O. Ry. Co.*, 241 U. S. 310. The evidence here was sufficient to submit the question of negligence to the jury.

But was the risk assumed by the employee? According to the Federal decisions, in cases other than for violation of the Federal statutes enacted for the safety of employees, the defense of assumption of risk shall have its former effect as a complete bar to an action under the statutes. *Seaboard Air Line Ry. Co.* v. *Horton,* 233 U. S. 492. The instant case therefore falls within the class of cases wherein the assumption of risk is a bar. Judge MILLER, in *Kirk* v. *Virginian Railway Co.,* 105 W. Va. 335, 142 S. E. 435, said: "But though not a favorite doctrine * * * an employee does assume the extraordinary dangers and hazzards which are apparent to him and which he sees and appreciates, but the burden of showing which is upon the railway company, and generally the fact of such knowledge and appreciation on the part of the employee is a question of fact for the jury to determine. *Harness* v. *B. & O. R. Co.,* 86 W. Va. 284, Syl. 8". In the *Harness* case, Judge Lynch says that the modified rule is applicable only when the employee knows of the extraordinary risks, or it is so obvious that a reasonable person would have appreciated it. Can we say in this case as a matter of law that Webb, bent on his duty of removing a tie to which work his foreman had assigned him, was negligent in assuming that the other trackmen, particularly Richmond, would perform their duty toward him, and saw or should have seen and appreciated the fact that Richmond was not doing so, and thereby assumed the risk of continuing to perform the duty imposed upon him by the foreman? Richmond was aware of the fact that others were working along the track, and must have known of Webb's presence. While Richmond's position within the rails and his manner of work, if properly handled would not be dangerous to Webb, who was shoveling from a position outside of the rails, yet his manner of swinging the pick after moving in tamping the head and under the rail would be extremely dangerous. Webb began to work at his task knowing that as long as Richmond was working inside the rails that he would be comparatively safe from injury. Proper regard for his safety would have led him to assume a different position had Richmond been tamping at the head.

Richmond owed Webb, as well as the other employees, a duty on shifting his position of first ascertaining whether or not his new position was too close to them for safety.

The foreman supports plaintiff's claim that Richmond was not within striking distance of him immediately before he assumed the position from which the plaintiff was struck. The foreman says he put Webb at work "cleaning out a tie bed"; and that "Richmond was five ties down—four ties, with a tie between that Kelly was cleaning out." This was the position of the two men when the foreman turned and started to walk back down the track. He had not gone more than "thirty or thirty-five feet, maybe forty" when his attention was attracted by a disturbance behind him, and upon looking around saw Richmond holding Webb in his arms. Then, again, Webb is supported in his story by Richmond, who says, "I was tamping on the inside of the rail * * *. When I got that through, I stepped one foot over * * * and went tamping right on the rail, stooping over." On being asked whether he hit Webb with the first lick after he stepped over outside the rail, he replied: "Well, I don't know whether it was the first, or it might have been the second." Thus the fact is established that Webb did not change his position but that his fellow workman, Richmond, on changing his position, did not perform a duty which he owed to Webb, that of first ascertaining what his changed position would be in relation to Webb. But the railway company to counteract the contention of the plaintiff, put in evidence a statement taken down a few months after the injury by a claim agent, which statement was prepared by such agent, and after being read over to Webb, was signed by the latter. In this statement Webb was made to say "I knew we were working too close together and would have to be careful." This bare statement is robbed of much of its force when read in its setting in the entire statement purported to have been made by him, and considering the circumstances under which it was made. As we have shown, it is overborne by the testimony of Webb, Richmond and the foreman. Under this state of the facts, it was not a question of law for the court but for

the jury. It is only where the facts which control are not disputed and are such as reasonable minds can draw but one conclusion from them, that the question of the assumption of risk barring recovery is one of law for the court. *Krodel* v. *B. & O. R. Co.*, 99 W. Va. 374. The preponderance of the evidence convicted the company of negligence and acquitted Webb of any negligence or assumption of risk of defendant's negligence for which the defendant was responsible.

Defendant complains of plaintiff's instruction No. 3, as well as No. 1, in its form as amended by the court, on the ground that they fail to incorporate the whole doctrine of the assumption of risk. The court, however, at the instance of the defendant did give its instruction No. 10, which told the jury that an employee assumes not only the ordinary risks incident to his employment but also all other risks incident thereto, provided he knows of such extraordinary risks and appreciates the danger, or provided such risks are so plain to be seen that he must be presumed to know them and to appreciate the danger. This is undoubtedly the law. *Butler* v. *Frazee*, 211 U. S. 459; *Gila Valley Ry. Co.* v. *Hall*, 232 U. S. 94; *Seaboard Air Line Ry.* v. *Horton, supra; Southern Ry. Co.* v. *Crockett*, 234 U. S. 725; *Boldt* v. *Pennsylvania R. R.*, 245 U. S. 441; *Leitch* v. *C. & O. Ry. Co.*, 97 W. Va. 498. The two instructions complained of, as we read them, tell the jury, in effect, that a laborer does not assume any risk that a reasonably prudent man would not expect to arise in the course of his employment. They are not in conflict with the law laid down in defendant's instruction No. 10, and while crudely drawn were not improper, and when read with instruction No. 10, correctly propounded the law to the jury. The railroad company complains of the court's refusal to give certain instructions. The primary purpose of instruction No. 2 was to tell the jury that the mere fact that the plaintiff was injured is not of itself any evidence of negligence upon the part of the defendant railway company on which the jury could base a verdict against said company. The court, however, gave another instruction at the defendant's instance which fully covered this feature. In this latter instruction

the jury at the instance of the defendant by the learned judge struck by a tamping pick at the time mentioned in the evidence standing alone, is not of itself any evidence that the defendant railway company was negligent or at fault for the injury to Webb.'' In instruction No. 2-B the court was asked to tell the jury, among other things, that, if Richmond was engaged in tamping ties in the usual and ordinary way that such work was done, and that prior to the injury Richmond had not seen the plaintiff, Webb, at the point of injury, and did not know that he was there, that the jury would not be warranted in finding him guilty of negligence. It omitted the element that Richmond used that degree of care which a reasonably prudent person under like circumstances would use to ascertain whether or not his act was likely to result in injury to another. Nos. 6, 7 and 8, while stating in the main correct propositions of law, are either not warranted under the facts proven in this case, or are practically covered by other instructions given to the jury. The seven instructions given the jury were told that ''the mere fact that the plaintiff was very fully presented the law of the case from the standpoint of the railroad company.

The final question is: Is the verdict excessive? It is in evidence that the plaintiff has not been able to do any work since the injury; that immediately following such injury he was in bed off and on for about three weeks, and nearly all of the following winter; that a physician waited upon him for nearly a year, seeing him on an average of two or three times a week; that when he attempted to do anything, such as work a little bit in the garden or field, he got weak and nervous and had to quit; and that his head constantly hurt him. He had worked for the railroad company prior to the injury in all nine years, during which time he was strong and able to do hard labor, and was in good health at the time of the injury complained of.

At the August term, 1926 (nearly a year afterward), on motion of the defendant, the court appointed six reputable practicing physicians to make an examination of plaintiff's condition, on the theory that he was malingering. These physicians all testified at the time of such examination that Webb was a very sick man, and had a

rapid pulse ranging from 110 to 132 per minute, with a temperature of 100.2°, and was in a very weakened physical condition. Two physicians, Cook and Hedrick, testified that in their opinion the present condition of the plaintiff was directly attributable to the injury. Five physicians testified to the opposite, and further that in their opinion plaintiff was suffering from toxic goitre, which could and would produce all the symptoms of which he complained. Thus is seen a conflict in the expert testimony on the issue whether plaintiff's condition is directly attributable to the injury. As to this latter class of evidence, the decisions are to the effect that where there is a conflict between the opinions of different experts or skilled witnesses, it is for the triers of the fact to decide which witnesses they will believe or rely on. 22 C. J. 738. Proof of facts will usually outweigh opinions or estimates contrary thereto. *Comstock* v. *Lumber Company,* 69 W. Va. 100. The testimony of expert witnesses is not exclusive, and does not necessarily destroy the force or credibility of other testimony. The jury has a right to weigh the testimony of all the witnesses, experts and otherwise; and the same rule applies as to the weight and credibility of such testimony. *Payne* v. *Railway Company,* 47 Wash. 342.

Considering the admitted character of the injury, the direct testimony as to the extent of plaintiff's suffering, and his former good health, coupled with the expert testimony in his favor, the jury were amply justified in finding that the condition of the plaintiff as disclosed by the medical examination upon the trial was directly attributable to the injury. The permanency of the injury is shown by its long duration and its present baleful character as testified to by all the physicians who were called as witnesses on the trial by both plaintiff and defendant. It is patent that if the present physical condition of the defendant is due to such injury, it is not the province of the Court to declare it excessive since we cannot say that it is so excessive as to indicate passion and prejudice on the part of the jury. See note on excessiveness of verdicts, 46 A. L. R. 1230.

The judgment will be affirmed.

*Affirmed.*