CLORUS L. SHIFLETT *v.* WESTERN MARYLAND RAILWAY COMPANY

(No. 8675)

Submitted January 19, 1938. Decided March 8, 1938.

*E. A. Bowers, P. T. Ward* and *Paul S. Parsons,* for plaintiff in error.

*S. H. Sharp* and *A. E. Cooper,* for defendant in error.

Fox, Judge:

This is an action under the Federal Employers' Liability Act, instituted by Clorus L. Shiflett against the Western Maryland Railway Company, in the circuit court of Pocahontas County, to recover of the defendant damages for injuries sustained by the plaintiff while in the defendant's employ. A trial of the case before a jury resulted in a verdict for the plaintiff, on which judgment was entered by the court. To said judgment the defendant prosecutes this writ of error.

At the date of the injury out of which this action arises, the plaintiff was employed by the defendant as a section hand. Such employment had extended over a period of more than twenty years, a part of which time he acted as section foreman. At the time of the injury, the defendant was engaged in relaying its track, and preparatory thereto, was unloading steel rails from a gondola car. This unloading of rails was effected by the use of a steam-operated crane or hoisting machine which was placed on a car attached to the gondola in which the rails were loaded, and this crane was run by two men, one a fireman and the other the operator of the crane. The rails, each of which weighed 990 pounds, were lifted from the gondola car by the crane by means of a cable

and tongs. The operation inside the gondola car was handled by three men, one located at the center of the car, whose duty it was to attach the tongs to the rail; another at the end of the car who guided the rails after they had been lifted so that they could be lowered to the ground at the proper place; and an employee, in this case the plaintiff, Shiflett, whose duty it was to turn or otherwise handle the rails so that the tongs could be applied thereto by the tong man in the center of the car. In turning the rails, Shiflett used what is called in the record a "safety fork", which could be adjusted to the rails through pressure of the hand to the handle of the appliance. He was supposed to apply this fork, turn the rail in position so that the tongs could be applied, and then release the fork. The operator of the crane and the three men who were working in the car were all in plain view of each other. On the morning of the accident, the crew engaged in unloading rails was short one man, and Shiflett was directed by his section foreman to assist the crew, which is denominated in the record a "ditcher crew". Following this direction, he entered upon his work. He states he was not given special instructions as to the use of the safety fork, but that when he went into the gondola car, he found his fellow worker, Taylor, at the end of the car in a space large enough so that they could operate with safety, and being given his choice of the work he should perform, although he had never used a tool of this type, took up the safety fork and began turning rails, Taylor guiding them over the side of the gondola. Taylor says he instructed Shiflett as to the use of the safety fork. They began work about eight o'clock in the morning and continued for some two hours, during which time quite a number of rails were unloaded. Shiflett practically admits that he knew how to use the safety fork, and says that they probably unloaded as many as 150 or 200 rails, while the estimates of other witnesses are much lower, some being as low as 50 rails. Apparently, from the statement of witness Emmett Cross, all of the rails were unloaded from one car, and this may bear somewhat on the number of rails unloaded prior to

the accident. About ten o'clock Shiflett placed the safety fork on a rail, turned the same in position where the tongs could be applied, and they were applied. The testimony of the plaintiff is that the rail was given a quick jerk by the operator of the crane, and the safety fork not being released from the rail, was thereby caused to strike the plaintiff in the right temple, inflicting the injury of which he complains. The crane operator denies this statement; Taylor was looking in another direction and did not see the accident; and the tong man in the middle of the car died before the trial. No signals were given at any time while the work progressed as to when the tongs had been applied, or when a rail was to be lifted, or the safety fork should be released. Apparently, the parties, being in plain view of each other, depended upon sight. No warning was given at the time this particular rail was moved, and it appears from the testimony that this was the first time the movement of any rail had caused a happening of this nature.

The defendant contends (1) that the risk of the accident from the employment in which the plaintiff was engaged, being plain and obvious, was assumed by him; and (2) that he was guilty of negligence, which was the proximate cause of the injury sustained by him.

Under the Federal Employers' Liability Act, a plea of assumption of risk is not precluded as a defense, except in cases where there is a violation of some statute enacted for the safety of employees. *Seaboard Airline Railway* v. *Horton,* 233 U. S. 492, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; *Chicago R. I. & P. Railroad Company* v. *Ward,* 252 U. S. 18, 40 S. Ct. 275, 64 L. Ed. 430; *Campbell* v. *Chicago, R. I. & P. Railroad Company,* 120 Neb. 499, 234 N. W. 395; *Looney, Adm'x.* v. *Norfolk & Western Railway Company,* 102 W. Va. 40, 135 S. E. 262, 137 S. E. 756, 48 A. L. R. 806; Thornton's Federal Employers' Liability Act, sections 122-126; Richey, Federal Employers' Liability Act, section 69. The rule as to risk assumed under that act is clearly defined by our decisions. In *Harness, Adm'x.* v. *Baltimore & Ohio Railroad Co.,* 86 W. Va. 284, 103 S. E.

866, 867, this court held:

> "An employee assumes those risks and dangers which are ordinarily incident to the employment in which he voluntarily engages, but he does not assume extraordinary risks incident thereto, or risks due to the negligence of his employer or of those for whose conduct the employer is responsible, until he becomes aware of such negligent act, defect or disrepair, and of the risk arising therefrom, or unless the danger is so obvious that an ordinarily prudent person, under similar circumstances, would have observed and appreciated it."

And further,

> "Where an employee is without knowledge of such unusual risks, and not chargeable with notice thereof because of their obvious nature, he is under no duty to anticipate and take precautions to discover them, but has the right to assume that the employer has exercised proper care in providing a reasonably safe place and a reasonably safe system or method in and under which to work."

See also *Childress* v. *Norfolk & Western Railway Company*, 111 W. Va. 92, 160 S. E. 564; *Thomas* v. *Chesapeake & Ohio Railway Co.*, 111 W. Va. 389, 162 S. E. 169. These holdings are supported by cases from other jurisdictions. *Seaboard Airline Railway* v. *Horton, supra; Toledo, St. Louis & Western Railroad Company* v. *Allen*, 276 U. S. 165, 166, 48 S. Ct. 215, 216, 72 L. Ed. 513; *Delaware, Lackawanna & Western Railroad Company* v. *Koske*, 279 U. S. 7, 49 S. Ct. 202, 73 L. Ed. 578; *Chesapeake & Ohio Railroad Company* v. *Kuhn*, 284 U. S. 44, 52 S. Ct. 45, 76 L. Ed. 157; *Campbell* v. *Chicago R. I. & P. Railroad Co., supra;* Thornton's Federal Employers' Liability Act, section 126. The negligence of a fellow servant, not foreseen or observed from experience, is not a risk assumed by an employee. *Reed* v. *Director General*, 258 U. S. 92, 42 S. Ct. 191, 66 L. Ed. 480; *Hull, Adm'x.* v. *Virginian Railway Co.*, 78 W. Va. 25, 88 S. E.

1060; Thornton's Federal Employers' Liability Act, section 129. It has been held also that a single act of negligence of a fellow servant is not a risk assumed under the act. *Webb* v. *Chesapeake & Ohio Railroad*, 105 W. Va. 555, 144 S. E. 100. This case is also authority for the proposition that "when the injury arises from a single act of negligence of a fellow employee creating a sudden emergency without warning to the plaintiff or opportunity to judge of the resulting danger", the defense of assumed risk is inapplicable; and this proposition is supported by *McMullen* v. *Atchison, Topeka & Santa Fe Railway Co.*, 107 Kan. 274, 191 Pac. 306; *Chicago R. I. & P. Railroad Co.* v. *Ward, supra.* The two cases last cited involve the sudden moving of cars without warning, resulting in an injury to an employee. In *Prowse* v. *Owens Bottle Co.*, 95 W. Va. 81, 120 S. E. 300, the lowering of a drill without warning, resulting in injury to an employee, was held to be a negligent act warranting recovery against the employer.

Whatever risks may have attended the work in which the plaintiff was engaged, it certainly cannot be said that the risk of this particular accident was an obvious one. No question is raised with respect to any defect in the equipment or the tools employed in this work. It is admitted that he was furnished a safe place in which to work, in that there was ample space where he was standing to perform his work without danger. It may be questioned whether or not the system employed was a safe one, in that no signals or warnings were given as to the time when a rail was to be lifted, or when the duties of the plaintiff in holding a rail in place for application of the tongs would end; but any complaint as to a weakness in the system is complicated by the fact that the plaintiff had opportunity to observe the system and made no objection thereto. It may be that under the circumstances, he was not called upon to object when only a short time had elapsed after he first had knowledge of the system employed. The evidence is clear, however, that up to the time of the accident involved herein, the rails had been unloaded by the use of the crane in such

a manner as to avoid danger to any of the employees engaged in this work. If there was a sudden jerking of a rail, whatever caused the same, it was not an occurrence which could have been reasonably anticipated. If no sudden jerking of a rail had occurred in the unloading of the other rails, it lessened, in the mind of the plaintiff, the probability of such an occurrence. The jury may have believed that there was a quick jerking of this particular rail, due to negligence on the part of the operator of the crane, who was a fellow servant of the plaintiff. The question of whether or not, under such circumstances, a servant is negligent is ordinarily one for a jury. *Harness* v. *Baltimore & Ohio Railroad Co., supra; McMullen* v. *Atchison, Topeka & Santa Fe Railway Co., supra.* In this case we cannot say that the action of the jury was not based upon its belief of negligence on the part of the defendant or its servant.

The question of the negligence of the plaintiff is raised by the defendant. It is difficult to see in what respect plaintiff was negligent. It was his duty to hold the rail in place until the tongs could be applied, and had the rail been moved in the usual manner, it is probable that no injury would have resulted. The first movement in the raising of a rail and the release of the safety fork would, ordinarily, be concurrent acts. At best, the negligence of the plaintiff, if any, was concurrent with the alleged negligence of the operator of the crane. Under the act under which this suit was instituted, negligence, to operate as a bar to recovery, must be the proximate cause of the injury; if it only contributed thereto, it can only be considered in diminution of damages. (U. S. C. A. Title 45, sec. 53).

We hold that it was within the province of the jury to determine whether or not there was a negligent and sudden jerking of the rail by a fellow servant, the operator of the crane. The necessary effect of the jury's verdict is that there was negligence on the part of the defendant, or for which it is responsible, and we do not feel that we are warranted in disturbing its findings.

The judgment of the circuit court is therefore affirmed.

*Affirmed.*