H. J. JENKINS v. JAMES M. KURN and JOHN G. LONSDALE, Trustees of THE ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellants. —156 S. W. (2d) 668.

Division One, October 30, 1941.

Rehearing Denied, December 12, 1941.

*F. P. Sizer, W. B. Myers* and *C. E. Reed* for respondent.

*Mann & Mann* for appellants.

 BRADLEY, C.—This is an action under the Federal Employers' Liability Act to recover for injuries received when plaintiff, a locomotive fireman, jumped from a moving freight train. The jury returned a verdict in favor of plaintiff for $12,000. The motion for new trial was overruled and defendants appealed.

It is conceded that the cause is properly under the Federal Employers' Liability Act. Plaintiff resided at Enid, Oklahoma, and his run was from Enid to Beaumont, Kansas. July 20, 1937, plaintiff was fireman on a northbound mixed train, No. 630, consisting of thirty-two freight cars and two coaches. The crew consisted of the conductor, engineer, fireman, and two brakemen. Plaintiff jumped from his engine and was injured in the railroad yards at Winfield, Kansas, about 7:10 P. M. Train No. 630 left Arkansas City, Kansas, 14 miles south of Winfield, about thirty minutes behind freight train No. 1229, and plaintiff knew this. The Santa Fe crosses the Frisco at Winfield, and No. 1229 stopped in the yards at Winfield, and south (we may say) of the Santa Fe tracks. The engine was cut loose and moved over north of the Santa Fe tracks to get water. The freight cars and caboose, belonging to 1229, were left on the main track, and train No. 630 ran into the caboose. The engineer of 630 was killed and plaintiff, as stated, jumped from the engine and was injured.

Plaintiff alleged five grounds of negligence, but the cause went to the jury on the charge that the engineer on No. 630 was negligent "in that after he was notified by plaintiff that the extra train (No. 1229) was standing on said track . . . he failed to immediately apply the air in the emergency to stop said train, which negligence . . . forced plaintiff to jump from said train in order to save his life or some bodily harm." The answer, except admission, was a general denial, contributory negligence, and assumption of risk. The reply was a general denial.

Error is assigned (1) on the refusal, at the close of the case, of a

demurrer to the evidence; (2) on given and refused instructions; and (3) on an alleged excessive verdict.

We heretofore handed down an opinion in this cause holding that defendant's demurrer to the evidence should have been sustained and reversed the judgment, but did not rule the other assignments. [See Jenkins v. Kurn et al., 346 Mo. 904, 144 S. W. (2d) 76.] The Supreme Court of the United States granted certiorari (312 U. S. 675, 61 Sup. Ct. 740, 85 L. Ed. 660) and held that "the evidence was ample to warrant submission" to the jury and the cause was remanded to this court for disposition on assignments other than on the sufficiency of the evidence. [See Jenkins v. Kurn et al., 312 U. S. 675, 61 Sup. Ct. 934, 85 L. Ed. 851.]

Our statement, supra, as to the facts, is taken from our former opinion and we make reference to that opinion for the full story of the facts.

Defendants assign error on plaintiff's instructions 1, 2, and 3, and on the refusal of defendants' requested instructions E and F, and on an alleged excessive verdict.

Defendants say that plaintiff's instruction No. 1 is erroneous "in that it attempts to cover the entire case and directs a verdict for the plaintiff on the finding of facts therein hypothesized, but ignores the pleaded defense of assumption of risk, which issue was not presented or covered by any instruction given to the jury."

The defense of assumption of risk, under the Federal Employers' Liability Act, was abolished in 1939, in so far as concerns such facts as here, 45 U. S. C. A., sec. 54, as amended August 11, 1939, but as appears, plaintiff was injured prior to the amendment. Plaintiff contends that, under the facts, there was no place for the defense of assumption of risk, hence there was no occasion to submit such defense. Giving to the facts the effect as given by the Supreme Court of the United States, and this we must do, we agree with plaintiff that there is no place here for the defense of assumption of risk. Such defense is inapplicable when the injury arises from a single act of negligence creating a sudden emergency without warning to the injured employee or where he has not sufficient opportunity to appreciate the danger. [Chicago, R. I. & Pac. Ry. Co. et al. v. Ward, 252 U. S. 18, 40 Sup. Ct. 275, 64 L. Ed. 430; Chesapeake & O. R. Co. v. Proffitt, 241 U. S. 462, 36 Sup. Ct. 620, 60 L. Ed. 1102; Sumner v. Ann Arbor R. Co., 235 Mich. 293, 209 N. W. 184; Webb v. Chesapeake & O. R. Co., 105 W. Va. 555, 144 S. E. 100.] In the Sumner case it is said (209 N. W. l. c. 186):

"Where an injury is occasioned by a single act, as distinguished from a series of acts of negligence, creating a sudden emergency, without warning and opportunity to judge of the danger and to decline meeting it, the defense of assumption of risk may not be made."

The Supreme Court of the United States, in ruling the demurrer to the evidence in this case, said (61 Sup. Ct. 1. c. 935): ''Petitioner (plaintiff) was required by the allegations of his complaint to prove that he acted promptly and reasonably to awaken the engineer to the danger ahead. Since the only count submitted to the jury charged that the engineer was negligent in failing to apply the brakes after notice of the train in front, petitioner was compelled also to prove that the notice was communicated to the engineer. But to establish the fact of communication petitioner had only to prove that the engineer should have comprehended the warning under the circumstances disclosed. He was not obligated to go further and produce evidence of the subjective reactions in the engineer's mind.'' When plaintiff jumped he, of course, realized that the engineer was not going to act or could not act in time, and at the time he jumped he was acting in an emergency.

The pertinent part of plaintiff's instruction No. 2 is as follows: ''Therefore, if you shall believe and find from the greater weight of the testimony that the engineer in charge of train No. 630 was notified by the plaintiff that the extra train No. 1229 was standing on the main line track, ahead of them, and such notice was given in time for the engineer to make such emergency stop, then it was his duty to make such stop, if you find that the engineer understood the signal *or in the exercise of ordinary care could have so understood the signal,* and if you further find that he failed to do so, and forced plaintiff to jump from said engine to save his life, or bodily harm, and that such conduct on the part of the engineer, under all the facts and circumstances, ▮ was not in the exercise of ordinary care, then the defendants were guilty of negligence'' (italics ours).

▮ Defendant challenges plaintiff's instruction No. 2 on four grounds: (1) That ''the evidence was insufficient to warrant the finding of facts hypothesized: (2) that the instruction is bad because it told the jury that if timely warning was given the engineer, then it was his absolute duty to stop; (3) that the instruction is broader than the pleadings; and (4) that the instruction erroneously ''authorized the jury to find the engineer guilty of negligence, even though he did not receive said notice or knowledge (of the train ahead), if the jury found that the engineer in the exercise of ordinary care should have understood'' plaintiff.

The first ground is, in effect, disposed of adversely to defendants by the opinion of the Supreme Court of the United States. As to the second ground defendants say that ''the law imposed no such absolute duty upon the engineer;'' that the engineer ''was required only to exercise ordinary care'' to stop. There is no merit to the second complaint on instruction No. 2. Read as a whole it only required the exercise of ordinary care on the part of the engineer.

The third and fourth grounds are, in effect, similar; and may be

considered together. Defendants say: "If the engineer did not hear what respondent said, then, under the issue made by the pleading he was not, he could not be, negligent because he is charged only with failing to act after notice."

Defendants contend that instruction No. 2 submits in the alternative, and that such is not justified by the pleadings; that instruction No. 2 permits recovery if found that the engineer failed to stop upon notice in time of the train on the track ahead, if found that he *understood* the signal; "or (2) in the exercise of ordinary care could have so understood the signal."

In the former opinion in this case by this court it is stated (346 Mo. 904, 144 S. W. (2d) l. c. 77): "Plaintiff alleged five grounds of negligence, but the cause went to the jury on the charge that the engineer on No. 630 was negligent 'in that after he was notified by plaintiff that the extra train (No. 1229) was standing on said track . . . he failed to immediately apply the air in the emergency to stop said train, which negligence . . . forced plaintiff to jump from said train in order to save his life or some bodily harm.' " Such was the *fourth* ground of negligence charged in the petition.

The Supreme Court of the United States, in this case, said (61 Sup. Ct. l. c. 935):

"To be sure petitioner was required by the allegations of his complaint to prove that he acted promptly and reasonably to awaken the engineer to the danger ahead. Since *the only count submitted* to the jury charged that the engineer was negligent *in failing to apply the brakes after notice of the train in front*, petitioner was compelled also to prove that the notice was communicated to the engineer. But to establish the fact of communication petitioner had only to prove that the engineer *should have comprehended the warning* under the circumstances disclosed. He was not obligated to go further and produce evidence of the subjective reactions in the engineer's mind" (italics ours).

It will not be necessary, as we see it, to rule the question as to whether or not there was in fact an alternative submission. It will be conceded that plaintiff could recover, under the evidence, on the claimed alternative, if such had been pleaded, because then there could be no claim that instruction No. 2 was broader than the petition.

Without objection plaintiff testified: "I had known the engineer, Reece, ever since I went to Enid, 1919. I had made runs with him before. As far as I know his hearing was all right. I had talked to him, normal conversation in our cab, and he could hear me. Q. Just how big is this cab inside there, Mr. Jenkins, your cab of this engine you were in that day? A. I just don't know the exact feet across from inside my seat over to the engineer's seat, but somewhere in the neighborhood of— Q. (interrupting) Well, just illustrate

here to the jury just about how far it is. A. Well, it is just about—in the deck it is about as wide as from the south side of the witness box, south side of the witness box to the north edge of the jury box. Q. Now, you just place me, now you tell the jury just about how far your face was from the engineer's face at the time you yelled to him. A. I suppose you are about the same distance I am, just about it, right at it. Q. Now are you on the same level? A. Yes, sir, same level. ▮ Q. And when you gave this signal—you tell the jury now as near as you can remember it, just the signal, and in about the tone of voice, and motion, or anything else you made, just tell the jury about what you yelled when you were in the cab there, as you have stated it. Court: Now he has already gone over it. Mr. Myres: I want him to tell the tone of voice he said it in. A. Well, I hollered to him loud, gentlemen; the caboose was setting down there; I said, 'Pull that brake valve over in emergency.' . . . Q. Now have you talked to your engineer backwards and forwards in making trips in the cab? A. Yes. Q. Can he understand you, or do you know Reece to be a man of hearing—that he understood the signal you gave him? A. We talk to one another, you know, across, with anything, kind of carry on business, or train order; he would set over on his side of the seat and I would set on mine; we would talk to each other.''

Cross-examination: ''Q. Mr. Jenkins, before you ever got to the Walnut River Bridge, you had your injector on? A. Yes,. Q. Now the injector is the mechanism of the engine by which you pump your water to your boiler? A. Yes, sir. Q. From your tank? A. Yes. Q. And there is a good deal of steam escapes during that operation and considerable noise? A. No, the injector don't make steam and noise, they just kind of sing a little when you first put them on, and then you can't hear them hardly. Q. Of course, there is considerable noise? A. Might make a lot of noise, but there ain't nothing with the injector. Q. Of course, there is considerable noise about the cab of the engine, outside of the injector? A. No, the train don't make any noise. Q. Well, I say, outside of that there is considerable noise? A. No noise up in the cab; the train is about all the noise there is; there isn't any noise up in the cab from the injector.''

We think that the evidence last above set out tends to support the claimed alternative submission. It is well settled that a party cannot complain that an instruction is broader than the petition where evidence tending to support the *extension* goes in without objection. In such situations the petition will be considered as amended to conform to the evidence. [Ilgenfritz v. Missouri Power & Lt. Co., 340 Mo. 648, 101 S. W. (2d) 723, l. c. 726, and cases there cited.]

Plaintiff's instruction No. 3 is challenged on the ground that it

948

omitted the defense of assumption of risk. What we have said, supra, on this subject will suffice here.

Defendants' refused instruction E would have peremptorily told the jury that plaintiff violated rule 93 (pertaining to train movements in yards) and could not recover, and refused instruction F submitted the violation of rule 92, and directed a verdict for defendants if the jury found that plaintiff negligently violated the rule, "even though you may find and believe from the evidence that the defendants were also guilty of negligence" as submitted in other instructions.

The refusal of instruction E, under the opinion of the Supreme Court of the United States, was proper, and under Sec. 3 of the Federal Employers' Liability Act (45 U. S. C. A., sec. 53) it was proper to refuse instruction F. This section deals with the subject of contributory negligence, and provides that such negligence will not defeat recovery, but will go only to reduce the damages.

Defendants, in the brief, do not undertake to show that the verdict is excessive when measured by verdicts under comparable injuries. What is said in the brief on excessive verdict pertains to the argument that the verdict is excessive because, it is claimed, the jury did not diminish damages "in proportion to the amount of negligence attributable" to plaintiff. It is true that such negligence, when it exists, is a proper subject for consideration by the jury in determining damages (Sec. 3 of the act), but our attention is not directed to any authority that authorizes any one, except the trier of the facts, to determine "the amount of negligence attributable" to an employee as provided in Section 53.

We might say that we have examined the record pertinent to plaintiff's injuries, but do not deem it necessary to detail these injuries. It is sufficient, we think, to say that the verdict is not so excessive, when measured by comparable injuries, as to justify interference on that ground.

The judgment should be affirmed, and it is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.