# Richmond

## JOHN NICK MARTIN v. BONNIE PENN.

January 20, 1964.

Record No. 5665.

Present, Eggleston, C. J., and Spratley, Snead, I'Anson and Carrico, JJ.

The opinion states the case.

*R. Reid Young, Jr.* (*Douglas K. Frith; Young, Kiser & Frith,* on brief), for the plaintiff in error.

*A. L. Philpott* and *L. Dale McGhee* (*Philpott & McGhee,* on brief), for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

Bonnie Penn, while riding as a passenger in a pickup truck owned and operated by John Nick Martin, was injured when the vehicle ran off the road and overturned. Penn filed a motion for judgment to recover damages for his injuries, alleging that the accident was caused by the negligence of Martin in operating the vehicle with

a "defective steering mechanism." After the parties were at issue there was a trial by a jury which resulted in a verdict and judgment in favor of the plaintiff in the sum of $9,000. We granted the defendant, Martin, a writ of error. The parties will be referred to as they appeared in the court below.

The defendant concedes that at the time of the accident the plaintiff was a "paying passenger" in the vehicle and the sole issue on the appeal is whether the evidence adduced was sufficient to warrant the jury in finding that the defendant was guilty of negligence which was a proximate cause of the accident and the plaintiff's injuries.

The accident occurred about 6:15 a. m. on June 23, 1960, while Martin was driving the vehicle, a 1953 pickup truck with Penn as a passenger therein, along Highway 58 in Henry county. According to the plaintiff, Penn, as the truck was proceeding at a speed of from 35 to 40 miles per hour, he noticed that the driver, Martin, was "having some difficulty" in steering the vehicle; that Martin remarked, "Something done happened to my truck," and that shortly thereafter the vehicle ran off the road and overturned. Prior to that, Penn said, the truck had been driven in a "pretty careful" manner.

On cross-examination of the plaintiff it developed that at a previous hearing he had admitted that just before the accident the defendant had done nothing "wrong" in the operation of the vehicle.

A State trooper who came to the scene promptly, testified that the cause of the accident was the breaking of the "drag link," a part of the steering mechanism, which rendered the vehicle uncontrollable. He found that the detached part of the steering mechanism had fallen onto the pavement and gouged out a mark extending about 105 feet. This witness found that the truck carried an inspection sticker which would have expired on July 31, 1960.

The plaintiff introduced as witnesses five automobile mechanics with various years of experience, ranging from twelve to thirty-four years, who testified that they had examined the broken steering mechanism and found that the break was caused by excessive wear. They further testified that because of the wear on the mechanism there would have been an abnormal or excessive amount of play in the steering wheel which would have indicated to the driver that the steering apparatus was defective.

Alton Prillaman, an automobile mechanic of twenty-eight years experience, testified that the drag link end "came loose" because it was "worn out." He said that the operator would know that the mechanism was defective because the steering wheel would have "a lot of

play" or "free motion" in it. He also said that "a layman—a man who is just driving the vehicle"—could tell that the mechanism was worn.

Moyer Conner, with a similar experience of thirteen years, testified that the drag link, or "tie rod end" as he called it, was "worn excessively" and that this caused it to come apart. He said that because of the "excessive play in the steering wheel," which would have resulted from this worn mechanism, one "accustomed to driving" should have known of the defect.

Harvey Creasey, with a similar experience of thirty-four years, George Dickerson with an experience of twenty years, and Leonard Wood with an experience of twelve years, testified that the worn condition of the drag link would have indicated to the driver of the truck that the steering mechanism was defective.

The defendant, Martin, testified that as he was proceeding along the highway in the "usual" manner, "all of a sudden we just went flopping." Prior to the accident, he said, he had experienced no "trouble" with the truck and had no "knowledge" that "anything was wrong with the steering" mechanism. He further said that the vehicle carried an inspection certificate which would have expired on July 31 of that year and had been lubricated shortly before the accident.

Ralph Howell, a witness for the defendant, testified that he inspected the truck on January 20, 1960, and attached the usual inspection certificate which was due to expire on July 31; that during the course of his inspection he checked the steering mechanism, including the "tie rod ends," and found them free of defects; and that none of these parts was "loose" or showed evidence of wear at that time. However, on cross-examination, this witness, after examining the broken drag link taken from the defendant's truck, testified that it was in fact "worn completely out." He further testified that he had "known a lot" of such parts to wear out within five months, or even three months, and that the fact that the drag link on the defendant's truck was in good condition at the time of his inspection in January did not "mean" that is was not "worn out" at the time of the accident in June.

Willie Shelton, a mechanic in a local service station, testified that he lubricated the truck about two weeks before the accident; that during the course of his work he checked the steering mechanism, including the tie rod ends, and found them in proper condition; and that at that time the "ball joints" on the tie rods were not worn.

At the request of the plaintiff the lower court instructed the jury that "if you believe by a greater weight of the evidence in this case that the defendant's truck had a defective steering mechanism and that the defendant knew, or in the exercise of reasonable care should have known, of such defect, then the defendant was negligent. And if you further believe that such negligence was the proximate cause of the accident in which the plaintiff was injured, then you should find your verdict for the plaintiff."

Conversely, at the request of the defendant, the court instructed the jury that "in order for the plaintiff, Bonnie Penn, to recover, you must believe from a preponderance of the evidence that the defendant, John Nick Martin, knew, or under the circumstances should have known, that the steering mechanism on the automobile was defective."

Responding to this narrow issue, the jury in their verdict said: "We the jury have agreed * * * that John Nick Martin should have known of such defect, and find him guilty of negligent and award the plaintiff the sum of $9,000." At the suggestion of the court this verdict was amended to read, "We the jury find for the plaintiff Bonnie Penn and fix his damages at nine thousand dollars ($9,000)."

The defendant does not challenge the admissibility of the testimony of the several mechanics who appeared as expert witnesses for the plaintiff. His position is that such testimony, which he characterizes as "speculative," is not sufficient to "overcome the direct testimony" of the defendant and his witnesses that shortly before the accident the vehicle had been inspected, found to be in proper shape and free of defect, and that no defect in the steering mechanism was evident to the defendant until immediately before the accident. The substance of this contention is that the jury should, as a matter of law, have accepted the evidence adduced by the defendant rather than that adduced by the plaintiff. We do not agree with this contention.

It is true that in this jurisdiction we have recognized a limitation on the probative value of expert evidence. In *Lawson* v. *Darter*, 157 Va. 284, 293, 160 S. E. 74, we held that while expert testimony "should be scrutinized with care," its weight is for the jury. See also, *Neal* v. *Spencer*, 181 Va. 668, 673, 26 S. E. 2d 70, 72. In these two cases the jury accepted such expert evidence and we affirmed.

In *Beale* v. *King, Adm'x*, 204 Va. 443, 446, 132 S.E. 2d 476, 478, we held that opinion evidence of expert witnesses as to the value of an attorney's services, though uncontradicted, was not conclusive or

binding on the court or the jury. There the jury rejected such expert evidence and we affirmed that finding.

In *Hitt* v. *Smallwood*, 147 Va. 778, 789, 133 S. E. 503, we held that opinion evidence based on observation of the outside of a wall that no cement had been put in the foundation should not override the positive testimony of the mason who built the wall that he had put sufficient cement in it. There, again, the commissioner in chancery—the trier of the facts—rejected the expert evidence and we affirmed.

It is clear from our prior decisions that we have adhered to the general rule that it is for the jury, or the court trying the case without a jury, to determine the weight to be given the testimony of expert witnesses. *Ford* v. *Ford*, 200 Va. 674, 679, 107 S. E. 2d 397, 401, and authorities there cited. Or, to put the matter another way, in *Pepsi-Cola Bottling Co. of Norfolk* v. *McCullers*, 189 Va. 89, 99, 52 S. E. 2d 257, 261, we quoted with approval the holding in *Webb* v. *Chesapeake & Ohio Ry. Co.*, 105 W. Va. 555, 144 S. E. 100, 103, that "The jury has a right to weigh the testimony of all the witnesses, experts and otherwise." See also, 7 Mich. Jur., Evidence, § 176, pp. 553, 554; 20 Am. Jur., Evidence, § 1206, pp. 1056, 1057; 32 C. J. S., Evidence, § 569, pp. 389, 390.

In the present case the undisputed evidence is that the defective steering mechanism caused the accident. Without objection, the court instructed the jury that they were to be the sole judges of the "credibility of the witnesses and the weight to be given, if any, to their testimony." It is clear from their verdict that the jury have accepted the testimony of the expert witnesses introduced by the plaintiff that the defendant, "in the exercise of reasonable care, should have known" that the steering mechanism was defective. It was within their province to reject the testimony of the defendant that he had no prior indication of such defective condition. We cannot say, as a matter of law, that the jury's finding is without evidence to support it.

Accordingly the judgment is

*Affirmed.*