STATE OF WEST VIRGINIA

*v.*

SCOTTIE LEE WIMER

(No. 14744)

Decided December 10, 1981.

*Marvin L. Downing and William McCoy, Jr.* for plaintiff in error.

*Chauncey H. Browning*, Attorney General, *and Paula D. Maas*, Assistant Attorney General, for defendant in error.

McHUGH, JUSTICE:

This action is before this Court upon the petition of Scottie Lee Wimer (hereinafter "appellant") for an appeal from his 1979 conviction in the Circuit Court of Pendleton County, West Virginia, of the offense of murder in the first degree. By order of the circuit court entered April 16, 1979, the appellant was sentenced to life imprisonment in the West Virginia Penitentiary without a recommendation of mercy. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel.

Specifically, the appellant in November, 1978, was indicted by a Pendleton County grand jury for the murder of Raymond Swats. Subsequently, various pre-trial proceedings were conducted by the circuit court including the taking of evidence concerning: (1) the appellant's mental competency at the time of the alleged crime, (2) the admissibility of the appellant's confessions to police officers, and (3) the validity of certain warrantless searches of the home of the appellant's parents. The circuit court ruled adversely to the appellant upon those three issues. The appellant's trial was held on April 2 and April 3, 1979,

at the conclusion of which the jury found the appellant guilty of murder in the first degree. Upon the denial of the appellant's post-trial motions, the appellant was sentenced to the penitentiary.

The testimony at trial and other matters of record indicate that on October 14, 1978, the appellant hired the victim, Raymond Swats, a cab driver, to drive the appellant from Staunton, Virginia, to West Virginia. During the trip to West Virginia the appellant consumed whiskey. While the cab was parked along a secluded road near Cherry Grove, Pendleton County, West Virginia, the appellant drew a .22 caliber pistol and shot the victim several times in the head, resulting in death. The appellant then took money from the victim, removed the victim from the cab, and drove the cab to Cherry Grove.

At the appellant's trial, Trooper George Worden of the West Virginia State Police testified that after he observed the body of the victim at the scene of the homicide, he went to Cherry Grove where the cab was found parked approximately 150 yards from the home of the appellant's parents. A resident of that area reported that the appellant had been seen near the cab, and a general search for the appellant was instituted.

On October 14, 1978, the day of the homicide, two warrantless searches were conducted by police of the home of the appellant's parents. The evidence indicates that during the first search of the home, Trooper Worden found a .32 caliber revolver lying on a shelf. That revolver was later identified as belonging to the victim, Raymond Swats, and admitted into evidence. Subsequent to the second search of the home, Trooper Worden discharged a tear gas cannister in the home resulting in the appellant's surrender to police and arrest.

As described below, the appellant on October 14, 1978, gave two confessions to police officers concerning the shooting of the victim. A third confession was given to police officers by the appellant on October 16, 1978. All

three confessions were admitted into evidence at the appellant's trial.

It is from his conviction and sentencing for first degree murder in the Circuit Court of Pendleton County that the appellant appeals to this Court.

The appellant raises three principal issues before this Court. Specifically, the appellant contends that the circuit court committed error: (1) in the admission of his three confessions before the jury, and (2) in the admission before the jury of a .32 caliber revolver resulting from an alleged illegal search and seizure. Third, the appellant asserts that the circuit court should have ruled as a matter of law that the State failed to meet its burden of proof with respect to the issue of the appellant's sanity at the time the crime was committed.

## I.

### THE CONFESSIONS

The record indicates that immediately after the appellant was arrested at the home of his father on October 14, 1978, he gave a tape recorded confession to police officers. On that day, police officers obtained a second confession from the appellant. A third confession was given on October 16, 1978. The second and third confessions were written rather than tape recorded and were more detailed than the first confession. All three confessions were admitted into evidence.

The appellant alleges that the first confession was improperly obtained and that the second and third confessions, alleged products of the first confession, were also improper. Specifically, the appellant does not dispute the independent validity of the second and third confessions. Rather, the appellant asserts that the second and third confessions were tainted by the first confession.

The appellant asserts that he was not properly advised of his rights by police officers prior to making the first confession. Furthermore, the appellant asserts that, having just fled from a house containing tear gas prior to arrest, he was in no condition at that time to make a

confession. Upon a review of a recording of that confession alone, those assertions by the appellant appear to be correct.[1] However, that recording does not reflect all the circumstances surrounding the first confession, and we hold that the circuit court did not commit error in admitting the appellant's first confession into evidence.

In West Virginia, the admissibility of a confession in a criminal case is determined by the following rule:

> It is the mandatory duty of a trial court, whether requested or not, to hear the evidence and determine in the first instance, out of the presence of the jury, the voluntariness of an oral or written confession by an accused person prior to admitting the same into evidence, and the failure to observe this procedure constitutes reversible error.

Syl. pt. 1, *State v. Fortner,* 150 W. Va. 571, 148 S.E.2d 669 (1966). That rule, however, was modified by Syl. pt. 2, *State ex rel. White v. Mohn,* ___ W.Va. ___, 283 S.E.2d 914 (1981), which case held that the failure of the trial court to conduct a preliminary *in camera* hearing upon whether a defendant's inculpatory statements were voluntary does not automatically constitute reversible error. Furthermore, as we held in Syl. pt. 5, *State v. Starr,* 158 W. Va. 905, 216 S.E.2d 242 (1975): "The State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of part or all of an offense were voluntary before such may be admitted into the evidence of a criminal case." Finally, as we held in Syl. pt. 5, *State v. Plantz,* 155 W. Va. 24, 180 S.E.2d 614 (1971): "After the trial court determines that a confession is admissible in evidence it becomes the function of the jury to consider the weight and the credibility of the confession."

---

[1] This Court has listened to a tape recording of the appellant's first confession of October 14, 1978. That tape reveals that the appellant's Miranda warnings were given in a hurried manner prior to the appellant's statement. In fact, the warnings as given were for the most part unintelligible. However, that impropriety is not dispositive of the admissibility of that confession.

In the action before this Court, the trial judge took evidence prior to trial concerning the admissibility of the appellant's confessions. The trial judge held as follows: "The Court finds that said statements were freely and voluntarily given by the Defendant after having been advised of his constitutional rights and the Court finds each of said statements including the tape to be admissible in evidence at the trial of this case."[2]

Specifically, the record in this action indicates that the appellant received a statement of his constitutional rights prior to each of the three confessions admitted at trial. Importantly, the record indicates that the appellant received a statement of his rights two times before he made his first confession.[3] As the trial judge stated during the appellant's trial:

> [A]s the Court recalls the evidence at the in camera hearing, there were two separate warnings given to the defendant. One by the officer by reading of the card and explaining of the rights and at that time he says the defendant understood his rights and waived them. Then prior to the taking of the statement the warnings were again given as indicated on the tape recording, and if the Court were considering those on the tape recording alone, the Court would be inclined to consider more carefully the motion, but in view of the showing by the officer that proper warnings were given prior to that time and the waiver made, the motion would be overruled. It is only required that the warnings be given one time so long as they are understood and waived, and the Court believes that what occurred here and then the second

---

[2] With respect to the appellant's confessions, the trial judge stated as follows during the appellant's trial: "Those were found by a preponderance of the evidence to be properly admissible in that the defendant did voluntarily and knowingly waive his Miranda rights. . . ."

[3] At trial, Trooper Worden testified as follows with respect to the appellant's first confession: "I arrested him, advised him of his constitutional rights, put him into the back seat of my cruiser, and advised him of his rights again, and obtained a statement from him on that occasion."

warnings given rather rapidly to the defendant just prior to interrogation, which was recorded. That was done at the time of the arrest or when he was first taken into custody by the officers.

Upon all of the above, this Court is of the opinion that the record is sufficient to support the ruling of the circuit court that the appellant's first confession, which was tape recorded, and subsequent confessions were admissible at trial. As this Court held in Syl. pt. 1, *State v. Lamp,* 163 W.Va. 93, 254 S.E.2d 697 (1979): "The trial court has a wide discretion as to the admission of confessions and ordinarily this discretion will not be disturbed on review." *See also* Syl. pt. 2, *State v. Vance,* 162 W. Va. 467, 250 S.E.2d 146 (1978); *State v. Mayle,* 108 W. Va. 681, 685, 152 S.E. 633, 634 (1930).

## II.

## THE SEARCHES

During the appellant's trial, a .32 caliber revolver was admitted into evidence and identified as belonging to the victim, Raymond Swats. That revolver was found by police officers lying on a shelf during the first of two warrantless searches conducted on October 14, 1978, of the home of the appellant's parents. The appellant contends that, because the warrantless searches were unreasonable, it was error for the circuit court to admit the revolver into evidence. We do not agree.

Prior to trial, the circuit court took evidence upon the issue of the legality of the searches of the home of the appellant's parents and concluded that the searches were legal. In fact, the record indicates that the police entered the Wimer home at the request of the appellant's father. Consequently, as the circuit court noted at trial: "The Court held no search as such was made. The officers entered the home at the request of the family, including the owner of the property and the daughter and son of the owner, who enlisted the aid of the officers because the defendant threatened their lives with a gun, and the officers entered the residence to apprehend him, and in

plain view observed a weapon taken and later found it to be evidence in the case."

We, therefore, hold that it was not error for the circuit court to admit into evidence the revolver of the victim found in the home of the appellant's parents. As we held in Syl. pt. 8, *State v. Plantz*, 155 W. Va. 24, 180 S.E.2d 614 (1971): "The general rule is that the voluntary consent of a person who owns or controls premises to a search of such premises is sufficient to authorize such search without a search warrant, and that a search of such premises, without a warrant, when consented to, does not violate the constitutional prohibition against unreasonable searches and seizures."

## III.

## THE INSANITY DEFENSE

During the proceedings before the Circuit Court of Pendleton County, the appellant submitted evidence to the effect that he was insane at the time the crime was committed. Specifically, the evidence submitted by the appellant indicated that he suffered from temporal lobe epilepsy and that this mental defect resulted in the shooting of Raymond Swats on October 14, 1978. No evidence was submitted upon the issue of the appellant's competency to stand trial.

During the *in camera* hearing of March 21, 1979, Dr. Robert W. O'Donnell, a psychiatrist, testified that the results of the appellant's electroencephalograph and an examination of the appellant indicated that the appellant suffered from temporal lobe epilepsy resulting in seizures and that such mental defect prevented the appellant at the time of the shooting from conforming to normal conduct. However, Dr. O'Donnell further testified at this hearing that the appellant would have had to have been observed at the time of the shooting in order to conclude with absolute certainty that the shooting resulted from a seizure. Moreover, Dr. O'Donnell testified that of those suffering from the same illness as the appellant, one per cent would be likely to engage in criminal homicide. As a result of that *in camera* hearing, the circuit court con-

cluded that the appellant's competency at the time the alleged crime was committed was a jury question.

During the trial the appellant submitted testimony to the effect that in 1968 at age 14 he fell from a tractor and suffered a cerebral concussion and fractured skull. The appellant was in a "semi-coma" condition resulting from that injury. Dr. Charles J. Sites testified that in 1969 he requested that the appellant be seen by a psychiatrist and that a neurological examination of the appellant be conducted. The results of the 1969 examination of the appellant were disclosed to the jury and indicated that, although the appellant's electroencephalograph report was abnormal, the examination, being without an adequate history of the appellant, was inconclusive.

The testimony submitted by the appellant from his family indicated that after the appellant's 1968 injury he suffered periods of abnormal, violent behavior and that such behavior was accompanied by head pains. Furthermore, at trial Dr. O'Donnell testified that the appellant was mildly retarded, had difficulty with alcohol and that, based upon a reasonable medical probability, the appellant had a mental disorder preventing him from conforming to normal conduct at the time the crime was committed. However, Dr. O'Donnell again stated that of the people who suffer from temporal lobe epilepsy, approximately one per cent engage in such vicious criminal conduct as murder.

During the *in camera* hearing of March 21, 1979, and subsequent trial of the appellant, the lay and expert witnesses of the defense whose testimony tended to establish the appellant's insanity at the time of the crime, were cross-examined by the State. The State offered no expert medical witnesses of its own. On rebuttal, the State submitted the testimony of Deputy Paul Vandevander who testified that the appellant, while in jail since October, 1978, did not complain to him of having headaches.

This Court has established guidelines in various recent cases concerning the defense of insanity. As we have

stated: "There exists in the trial of an accused a presumption of sanity. However, should the accused offer evidence that he was insane, the presumption of sanity disappears and the burden is on the prosecution to prove beyond a reasonable doubt that the defendant was sane at the time of the offense." Syl. pt. 2, *State v. Daggett*, ___ W. Va. ___, 280 S.E.2d 545 (1981); Syl. pt. 1, *State v. Grimm*, ___ W. Va. ___, 270 S.E.2d 173 (1980); *Edwards v. Leverette*, 163 W. Va. 571, 258 S.E.2d 436, 439 (1979).

In Syl. pt. 3, *State v. Daggett, supra*, we specifically held as follows:

> When an accused is relying upon the defense of insanity at the time of the crime charged, the jury should be instructed (1) that there is a presumption the accused was sane at that time; (2) that the burden is upon him to show that he was then insane; (3) that if any evidence introduced by him or by the State fairly raises doubt upon the issue of his sanity at that time, the presumption of sanity ceases to exist; (4) that the State then has the burden to establish the sanity of the accused beyond a reasonable doubt, and, (5) that if the whole proof upon that issue leaves the jury with a reasonable doubt as to the defendant's sanity at that time the jury must accord him the benefit of the doubt and acquit him.

*See also, Edwards v. Leverette, supra*, 258 S.E.2d at 439.

In *State v. Milam*, 163 W. Va. 752, 260 S.E.2d 295 (1979), the defendant was convicted of second degree murder in the Circuit Court of Wyoming County, West Virginia. This conviction resulted from a retrial of the defendant for a shooting of the victim in an apartment building. The defendant's principal defense was insanity at the time the alleged crime was committed.

In *State v. Milam, supra*, this Court concluded that the prosecution failed to carry its burden of proving the defendant sane beyond a reasonable doubt. Specifically, the State offered no expert testimony to oppose the psychiatric testimony of the defendant. The defendant's testimony revealed that in 1962 the defendant suffered a

head injury, and subsequently he was placed in a mental facility where he was diagnosed as having psychosis due to trauma, personality disorder and convulsive and psychotic seizures. After the homicide in question, the defendant was diagnosed as having brain damage and mild retardation. We concluded that as a result of the insufficiency of the State's evidence upon the issue of insanity, double jeopardy precluded further prosecution of the defendant.

It should be noted that in *State v. Milam* the examining doctor could not state absolutely that the defendant was insane on the day of the homicide. Rather, the doctor testified that there was a probability or good possibility that the defendant was insane at that time. 260 S.E.2d at 301, 302. Moreover, the State offered no testimony, either lay or expert, to show that the defendant was sane at the time of the homicide.

This Court recognized in *State v. Milam* that there are occasions where the psychiatric testimony offered by the defendant is so demolished by cross-examination that the State need not counter such testimony with its own expert. 260 S.E.2d at 302. However, this Court stated as follows:

> "Because of the variegated nature of the evidence surrounding insanity, it is not possible to fashion a particular rule on whether the state has failed to carry its burden of proving sanity beyond a reasonable doubt. It does appear that where the defendant has offered evidence to meet the legal insanity test, shows a mental disease or defect that has its origins in some organic injury or disease, and shows that he has undergone mental treatment, all of which pre-existed the date of the crime, the failure of the state to produce countervailing testimony as to his competence will be fatal to its case." 260 S.E.2d at 302.

The *Milam* case appears to be similar to the action now before this Court. In *Milam,* the insanity issue was determined by the sufficiency of the evidence rather than upon

a strict rule of law. The same is true in the action before this Court. Specifically, we must determine whether there was sufficient evidence at the appellant's trial for the jury to conclude beyond a reasonable doubt that the appellant was sane at the time he allegedly killed Raymond Swats on October 14, 1978.

The appellant submitted substantial evidence, including the testimony of expert witnesses, of his insanity. It should be noted, however, that "[t]he testimony of expert witnesses is not exclusive and the jury has the right to weigh the testimony of all witnesses, experts and otherwise." *Middle-West Concrete Forming and Equipment Company v. General Insurance Company of America,* ____ W. Va. ____, 267 S.E.2d 742, 747 (1980); Syl. pt. 2, *Webb v. Chesapeake & Ohio Railway Company,* 105 W. Va. 555, 144 S.E. 100 (1928). *See also Martin v. Penn,* 204 Va. 822, 826, 134 S.E.2d 305, 307 (1964); *Opanowich v. Commonwealth,* 196 Va. 342, 354, 83 S.E.2d 432, 439 (1954).

Upon a consideration of the above-described testimony and other matters of evidence contained in the record concerning the question of the appellant's sanity, this Court is of the opinion that the jury could properly have concluded beyond a reasonable doubt that the appellant was sane at the time of the shooting on October 14, 1978. Specifically, the testimony in this action concerning the question of the appellant's insanity was somewhat speculative. In this action, Dr. O'Donnell twice testified that approximately one per cent of those suffering from the appellant's illness would engage in criminal homicide such as murder. Moreover, unlike the *Milam* case which involved a single act of shooting on the part of the defendant, the activity of the appellant in this action indicated greater culpability. The evidence in this action was that after the shooting, the appellant took the victim's money and threw the victim's wallet away. At that time, the appellant removed the body of the victim from the cab, drove the cab away and considered surrendering to authorities. Instead, the appellant went to his parent's home and appeared to be frightened. He then brandished a pistol in the presence of his family and subsequently hid

from the police prior to arrest. We conclude, therefore, that the evidence was sufficient to support the verdict of the jury.

Accordingly, upon all of the above, the appellant's conviction in the Circuit Court of Pendleton County is hereby affirmed.

*Affirmed.*