315 S.E.2d 397

**STATE of West Virginia**

v.

**George Ballard GUTHRIE, II.**

**No. 15754.**

Supreme Court of Appeals of West Virginia.

Jan. 27, 1984.

Rehearing Denied April 11, 1984.

Katz, Kantor, Katz, Perkins & Cameron, Norris Kantor, Bluefield, John C. Parr, St. Albans, for appellant.

Chauncey H. Browning, Atty. Gen., Gregory W. Bailey, Silas Taylor and Bradley Russell, Asst. Attys. Gen., Charleston, for appellee.

HARSHBARGER, Justice:

George Ballard Guthrie, II, was convicted of first-degree murder with a recommendation of mercy after a jury trial in Mercer County. He appeals the trial court's November, 1981 denial of his motion to set aside the verdict.

Guthrie, Naomi Cloud and John Corprew were indicted in September, 1980 for the January, 1980 murder of Ms. Cloud's husband, David, at their home in Princeton, West Virginia.[1] A trooper and a postal inspector from West Virginia took the indictment to Roanoke, Virginia, and presented it to a magistrate who used it as probable cause to issue a fugitive warrant. Virginia Code, 19.2–85, et seq.

Accompanied by Virginia peace officers, the West Virginians searched for Guthrie, finding him in Roanoke at about 9:25 p.m. at a garage where he was doing body work on a car. The Virginia officers arrested him and drove him some distance away to their headquarters in Salem, Virginia, rather than taking him to the local Roanoke magistrate from whom they had gotten the fugitive warrant. That magistrate was on call and was aware that they would return to present Guthrie. The West Virginia trooper requested the detour so that he could question Guthrie.

It is undisputed that Guthrie was read his Miranda[2] rights in the police car when he was arrested, and again at police headquarters. The trip to the police station took approximately twenty minutes and they arrived around 9:45 p.m. Guthrie was taken into a small office. The Virginia policeman left to get supplies to fingerprint and process Guthrie, and our officer began questioning him.[3] He signed a written waiver and confession by 10:40 p.m. and then was taken before a magistrate in Roanoke.

Corprew was also arrested in Virginia that evening, but he was taken directly to a magistrate.

Guthrie waived extradition, and the next day he was returned to Mercer County, and had counsel appointed for him.

A full suppression hearing was held in April, 1981. His counsel moved to suppress his inculpatory statement because it was made after a delay in presentment to a magistrate, and it was not voluntarily given because Guthrie was too intoxicated to knowingly waive his rights. The trial court ruled the confession admissible. He decided that the delay was not unreasonable or so lengthy that it justified exclusion of the confession. He also found that Guthrie had been under the influence of "speed" and beer, but that he was not so

---

1. Corprew and Ms. Cloud were supposed to have been lovers and planned Cloud's murder. It was alleged that Corprew offered Guthrie $2,500 to kill Cloud.

2. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974, reh. denied, 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121 (1966).

3. Guthrie's older brother drove from Roanoke to Salem police headquarters very soon after Guthrie arrived. He demanded to see his brother, but officers refused to interrupt the interrogation. The brother was unable to speak to defendant until after he was returned to Roanoke and presented to a magistrate.

severely intoxicated that he was without capacity to know what he was doing when he confessed.

## I.

## ADMISSIBILITY OF CONFESSION

Guthrie was arrested on a Virginia fugitive warrant in accord with the Uniform Criminal Extradition Law, Virginia Code, § 19.2–85 *et seq.*[4] Our first issue is whether an arrestee upon a fugitive warrant in Virginia for a crime allegedly committed in West Virginia must be promptly presented to a magistrate, and, if there is a delay in presentment, whether a confession elicited during that delay should be suppressed.

The extradition law provides that a justice or judge shall issue a warrant directing a peace officer to arrest a person charged with an offense in another state, if a credible person comes before the judicial officer and swears to an affidavit. The arrestee must be brought before any judge or magistrate in the harbouring state to answer the complaint and affidavit:

*Arrest prior to requisition.*—Whenever: (1) any person within this State shall be charged on the oath of any credible person before any judge, magistrate or other officer authorized to issue criminal warrants in this State with the commission of any crime in any other state and, except in cases arising under § 19.2–91, (a) with having fled from justice, (b) with having been convicted of a crime in that state and of having escaped from confinement, or (c) of having broken the terms of his bail, probation, or parole, or *(2) complaint shall have been made before any such judge, magistrate or other officer in this State setting forth on the affidavit of any credible person in another state that a crime has been committed in such other state and that the accused has been charged in such state with the commission of the crime,* and, except in cases arising under § 19.2–91, (a) has fled from justice, (b) having been convicted of a crime in that state has escaped from confinement, or (c) broken the terms of his bail, probation or parole, *and that the accused is believed to be in this State, such judge, magistrate or other officer shall issue a warrant* directed to any sheriff or to any peace officer commanding him *to apprehend the person named therein,* wherever he may be found in this State, *and to bring him before any judge who may be available in or convenient of access to the place where the arrest may be made,* to answer the charge of complaint and affidavit. A certified copy of the sworn charge or complaint and affidavit upon which the warrant is issued shall be attached to the warrant. Virginia Code, § 19.2–99.[5] (Emphasis supplied.)

The defendant maintains that his confession should have been suppressed because he was not promptly presented to a magistrate, but instead, was taken to police headquarters and interrogated.[6] He was arrested at 9:25 p.m. and taken before the magistrate at 11:45 p.m., a period of less than three hours. His thesis is that the officers had probable cause to arrest, (the warrant, founded on an indictment), so that pre-presentment interrogation was unnecessary, and the only reason he was not presented was to get him to confess.

Our state prompt presentment rule has been interpreted to proscribe delays in presentment, the sole purpose of which is to obtain a confession:

The delay in taking the defendant to a magistrate may be a critical factor where it appears that the primary purpose of the delay was to obtain a confession from the defendant. Syllabus Point 6, *State v. Persinger,* 169 W.Va. 121, 286 S.E.2d 261 (1982).

▆ We stated in *Persinger,* 169 W.Va. at 138, 286 S.E.2d, at 271: "[A]n unjustifia-

---

**4.** West Virginia has also adopted the Uniform Act. W.Va.Code, 5–1–1, *et seq.*

**5.** Our provision is W.Va.Code, 5–1–9(d).

**6.** Virginia's arrest and presentment statute, Virginia Code, 19.2–80, and our similar provision, West Virginia Code, 62–1–5, provide that persons arrested under warrant shall be taken before a magistrate "without unnecessary delay."

ble and unreasonable delay in taking the accused before a magistrate after his initial arrest may in itself be sufficient to render a confession involuntary." Earlier in that opinion, we wrote that it is not the length of the delay, but its purpose that affects the admissibility of a confession. *Id.*, 169 W.Va. at 135, 286 S.E.2d at 270.

In *State v. Mitter*, 169 W.Va. 652, 289 S.E.2d 457 (1982), we found that holding a defendant after a first confession in order to "clear up a few discrepancies" without presenting him to a magistrate was, in fact, unjustifiable and unreasonable and made the second written statement inadmissible. A magistrate had been alerted that his services would be required. After Mitter's first confession, police had probable cause to arrest him and should have presented him to a magistrate then.[7]

*Persinger* and *Mitter* show that this confession is inadmissible in West Virginia. The delay was unjustifiable, and that makes it involuntary. The rationale that justifies refusing to admit a confession under circumstances where a defendant was questioned by police officers at the police station rather than taken to a neutral magistrate for an explanation of his rights, the charges against him, and mechanisms for acquiring bail, is that a confession elicited under those circumstances is inherently unreliable or suspect. We may use the prompt presentment statute as an indication of the parameters of acceptable police behavior, but the true inquiry is into the trustworthiness of the confession.

Guthrie could easily have been presented to a magistrate, advised of his rights, informed of the charges, and his state of intoxication could have been assessed. The State argues that we are not to apply our prompt presentment statute extraterritori-

ally and Virginia, applying her own law, would admit this confession. There is authority for the government's position in *Davis v. State*, 42 Md.App. 546, 402 A.2d 77 (1979). We disagree with *Davis*. This is not a question of extraterritorial application of our prompt presentment rule. We must decide whether a confession elicited under the facts in this case is admissible in our criminal courts. Guthrie is not being tried in Virginia for a crime he committed in Virginia. He is being tried here.

We see an analogy between this case and controversies about the admissibility of confessions in federal courts where state authorities improperly delayed presentation of defendants to magistrates in contravention of federal rules. The usual rule is that delays by state officials will not foreclose admission of the confession in federal courts. *Burke v. United States*, 328 F.2d 399 (1st Cir.1964), *cert. denied*, 379 U.S. 849, 85 S.Ct. 91, 13 L.Ed.2d 52; *United States v. Gorman*, 355 F.2d 151 (2d Cir. 1965), *cert. denied*, 384 U.S. 1024, 86 S.Ct. 1962, 16 L.Ed.2d 1027; *United States v. Close*, 349 F.2d 841 (4th Cir.1965), *cert. denied*, 382 U.S. 992, 86 S.Ct. 573, 15 L.Ed.2d 479; *United States v. Watson*, 591 F.2d 1058 (5th Cir.1979), *cert. denied*, 441 U.S. 965, 99 S.Ct. 2414, 60 L.Ed.2d 1070; *United States v. Davis*, 459 F.2d 167 (6th Cir.1972); *United States v. Gaines*, 555 F.2d 618 (7th Cir.1977); *United States v. Morris*, 445 F.2d 1233 (8th Cir.1971), *cert. denied*, 404 U.S. 957, 92 S.Ct. 322, 30 L.Ed.2d 273; *Smith v. United States*, 390 F.2d 401 (9th Cir.1968); *United States v. Ireland*, 456 F.2d 74 (10th Cir.1972). Courts have evolved a very narrow exception to that rule: if a "working arrangement" between federal and state officials is provable, federal officers can be held ac-

---

7. Yet, in *State v. Wilson*, 170 W.Va. 443, 294 S.E.2d 296 (1982), we affirmed the admission of defendant's confession despite a delay in presentment. We explained that a probable cause determination had been made when the arrest warrant was issued and defendant had been informed of his rights, the two things prompt presentment was intended to guarantee. The court also wrote that there was no evidence that Wilson was emotionally distraught or that police had used forbidden practices.

These facts coincide with Guthrie's. It is undisputed that there was probable cause for arrest and that Guthrie was informed about his rights. There are no assertions of third-degree tactics or lengthy late-night interrogations, no promises, threats or improper inducements. If *Wilson* is correctly decided, it could be authority for admission of Guthrie's confession in West Virginia. We would not apply it here.

countable for delays brought about by state authorities. *Anderson v. United States,* 318 U.S. 350, 356, 63 S.Ct. 599, 602, 87 L.Ed. 829 (1943). Federal officials cannot conduct themselves illegally by collaboration with state authorities and avoid proscriptions against admission of confessions elicited under those circumstances. *United States v. Broadhead,* 413 F.2d 1351 (7th Cir.1969), *cert. denied,* 396 U.S. 1017, 90 S.Ct. 581, 24 L.Ed.2d 508; *United States v. Tupper,* 168 F.Supp. 907 (D.C.Mo.1958). *See also United States v. Valente,* 155 F.Supp. 577 (D.C.Mass.1957). The problem the courts have in applying this rule is finding a "working arrangement." *See generally* 1 Wright & Miller, *Federal Practice and Procedure: Criminal,* § 73 (1982) and cases cited therein; *United States v. Torres,* 663 F.2d 1019, 1023–1026 (10th Cir.1981).

■ We have no such problem in Guthrie's case. The West Virginia and Virginia police worked together to find and arrest Guthrie. Virginia's only involvement was her fugitive warrant predicated on a crime committed in West Virginia. At all times during arrest, questioning, processing and presentment the Virginia officers were accompanied by our West Virginia authorities. Finally, the evidence is clear that Guthrie's delay was prompted by our officers and the untimely interrogation was conducted by them. If these federal rules were applicable, this would be a case that fit neatly into the narrow "working arrangement" exception.

■ West Virginia officers may not avoid our state rules about prompt presentment of arrestees and admissibility of confessions when they cross our borders to apprehend a fugitive criminal suspect. The tangential involvement of Virginia police in the arrest process in Guthrie's case did not obviate the requirement that our officers follow our law.

We conclude that Guthrie's confession was inadmissible.

## II.

## INTOXICATION

■ Was Guthrie unable to give a voluntary confession because he was too intoxicated on drugs and alcohol to knowingly and intelligently waive his rights?[8] The trial court found that he had ingested "speed" and alcohol (beer), but that he was capable of making a valid waiver of his *Miranda* rights. The troopers all testified that Guthrie appeared normal. His family and friends testified that he was visibly intoxicated, could not stand properly, was red and droopy eyed, and very shaky. The trial judge heard the testimony and was in the best position to evaluate the credibility of witnesses. *State v. Wilson,* 170 W.Va. 443, 294 S.E.2d 296, 298 (1982); *State v. Lamp,* 163 W.Va. 93, 254 S.E.2d 697 (1979). We cannot say he was wrong. *State v. Vance,* 162 W.Va. 467, 250 S.E.2d 146 (1978).

## III.

## INSANITY

Guthrie offered evidence that he was insane, and he argues that the state failed to rebut that evidence sufficiently to permit the matter to go to a jury. This argument rests on Syllabus Point 2 of *State v. Milam,* 163 W.Va. 752, 260 S.E.2d 295 (1979) (*Milam II*):

> There exists in the trial of an accused a presumption of sanity. However, should the accused offer evidence that he was insane, the presumption of sanity disappears and the burden is on the prosecution to prove beyond a reasonable doubt that the defendant was sane at the time of the offense.

and language in *State ex rel. Smith v. Scott,* 167 W.Va. 231, 280 S.E.2d 811, 813 (1981):

> When the issue of sanity has been fully developed at trial and it conclusively appears that the defendant was not criminally responsible at the time the crime was committed, the trial judge may, and in many instances must, direct the verdict in favor of the defendant.

8. *See,* Annot., *Sufficiency of Showing That Voluntariness of Confession or Admission Was Af-* *fected By Alcohol or Other Drugs,* 25 A.L.R. 4th 419 (1983).

We used this language from *Smith* in *State v. Williams*, 171 W.Va. 556, 301 S.E.2d 187 (1983), and made it a syllabus point. Williams argued he should have received a directed verdict because he proved his own insanity. We disagreed:

> In this case the conflicting evidence adduced at trial forecloses the possibility that the evidence was "conclusive" of insanity, even if, as the appellant alleges, his psychiatric experts were superior to the State's psychiatric expert. *State v. Williams, supra*, 171 W.Va. at 561, 301 S.E.2d, at 192.

Here, Guthrie presented lay and expert testimony that he had organic brain damage, a long history of drug and alcohol abuse, blackouts from substance abuse, and had drug abuse mental disorders. He is within the normal range of intelligence. His experts were subjected to cross-examination, and aspects of their testimony may have appeared equivocal to a jury. The state called one psychiatrist who answered two questions about Guthrie's mental state with simple yes and no answers. He did not explain why or how he reached his conclusions that Guthrie had been capable of understanding and waiving his rights and that Guthrie was not suffering from a defect or disease that made him incapable of understanding what he was doing or conforming his behavior to the law.

Defendant's position is that he produced sufficient evidence of insanity to repeal the original presumption of sanity, that the State's submission of two curt, unexplained answers by its expert was equal to no rebuttal at all, and therefore, as a matter of law, Guthrie must be found insane.

We elaborated on the *Milam II* rules and the state's burden after a defendant has raised an insanity defense, in *State v. Wimer*, 168 W.Va. 417, 284 S.E.2d 890, 896 (1981):

> This Court recognized in *State v. Milam* that there are occasions where the psychiatric testimony offered by the defendant is so demolished by cross-examination that the State need not counter such testimony with its own expert. 163 W.Va. at 764, 260 S.E.2d at 302. However, this Court stated as follows:

> ... It does appear that where the defendant has offered evidence to meet the legal insanity test, shows a mental disease or defect that has its origins in some organic injury or disease, and shows that he has undergone mental treatment, all of which pre-existed the date of the crime, the failure of the state to produce countervailing testimony as to his competence will be fatal to its case.

163 W.Va. at 765, 260 S.E.2d at 302. Then we noted that expert testimony is not conclusive upon a jury. We concluded in *Wimer* that even without any expert testimony by the State, a jury could properly have concluded beyond a reasonable doubt that Wimer was sane.

The state's rebuttal testimony was not well explained, but was nonetheless evidence. The question of Guthrie's sanity was properly presented to the jury, and there was sufficient evidence for it to find that he was sane.

## IV.

### JUROR CHALLENGE

Did the trial court err in refusing to strike a juror for cause who indicated she had reservations about the efficiency of psychiatrists and psychologists? We have interpreted our *voir dire* statute, W.Va.Code, 56–6–12, that if a defendant requests, a court should have jurors questioned about their prejudices or biases against persons suspected of having mental diseases or defects, and against psychiatrists or psychologists. *State v. Sanders*, 161 W.Va. 399, 242 S.E.2d 554 (1978); *State v. Pendry*, 159 W.Va. 738, 227 S.E.2d 210 (1976), *overruled in part on other grounds*, 161 W.Va. 168, 241 S.E.2d 914 (1978). Guthrie was permitted to ask such questions:

Q. In general do you believe that psychiatrists and psychologists can help people?

A. No.

Q. Do you know any psychiatrists or psychologists? ·

A. No.

Q. You say you don't in general think they can help people. Is that based on prior experience or just a feeling?

A. It is just general feelings.

Q. Do you think people who work in the mental health profession such as psychiatrists and psychologists might be weird or seem to be weird?

A. Like I said, I don't know any of them, but from what I read and from what I see on television it looks to me like they have got as much problems as people they talk to, and it is two bothered people getting together and talking over problems.

Q. Is someone who is emotionally ill considered sick?

A. Yes.

Q. Can they help the way they are?

A. Well, I believe they could if they really had someone in the family, someone close to them, to help get them into a routine. I believe in work myself, and I think if you work hard and concentrate, keep your mind off the things that bother you and do something else and see if that would help.

Q. What is your opinion of someone claiming to be disabled on psychological or psychiatric grounds? I guess first of all I ought to ask do you think someone can be disabled for psychiatric or psychological reasons?

A. Not really.

Q. Is it possible to experience psychological pain?

A. I suppose so.

[ATTORNEY]: We thank you.

■ After this juror left the court's chambers, Guthrie's counsel moved to strike her because she indicated that she had a prejudice against psychiatrists, and could not accept their opinions in any circumstances. The trial court refused. The State's position, with which we agree, is that it was not possible to tell whether there was a bias or prejudice that would prevent this venirewoman from being impartial and fair because the questions were structured in a way that did not permit a fair evaluation of her response, and the record was not sufficiently developed to indicate cause to exclude her.

■ If there is a question of bias or prejudice about something other than a defendant's guilt or innocence, a defendant must show that the venireperson would be unable to pass judgment solely on the evidence and the court's instructions. Syllabus Point 6, *State v. Gum*, 172 W.Va. 534, 309 S.E.2d 32 (1983); *State v. White*, 171 W.Va. 658, 301 S.E.2d 615, 618 (1983); Syllabus Point 4, *State v. Audia*, 171 W.Va. 568, 301 S.E.2d 199 (1983); Syllabus Point 7, *State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902 (1982); *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981). Nothing in this record (express or implied) indicates that this juror would have been unable to render a fair verdict or listen impartially to the evidence. If a defendant intends to dismiss a juror for cause, he or she must prove that the juror's bias would interfere with the juror's ability to fairly evaluate the evidence presented and follow the law.

*Beck* is a good example of the need to develop the record. A juror's initial equivocation about a pertinent *voir dire* matter was clarified by questioning about her ability to reach a verdict based solely on the evidence. The court concluded that her earlier questionable responses did not make her incompetent to serve. The same was true of another juror who displayed a potential prejudice, but after explicit questioning about his ability to be impartial, he was permitted to serve.

We cannot conclude that this juror was unable to render a verdict solely on the evidence and the court's charge, and therefore, the trial court did not err by refusing to strike her for cause.

## V.

## PLEA BARGAIN

The trial court refused to accept the plea agreement Guthrie had with the prosecutor. Rule 11 of the West Virginia Rules of Criminal Procedure gives a trial court discretion to refuse a plea bargain.

West Virginia Rules of Criminal Procedure, Rule 11(e)(1) and (e)(4):

(e) *Plea Agreement Procedure.*

(1) In General.—The attorney for the state and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the state will do any of the following:

 (A) Move for dismissal of other charges; or

 (B) Make a recommendation or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

 (C) Agree that a specific sentence is the appropriate disposition of the case; or

 (D) Agree not to seek additional indictments or information for other known offenses arising out of past transactions.

The court shall not participate in any such discussions.

. . . . .

(4) Rejection of a Plea Agreement.—If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw his plea, and advise the defendant that if he persists in his guilty plea, or plea of nolo contendere, the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

Our rule copies the federal rule. Guthrie cites *United States v. Ammidown,* 162 D.C.App. 28, 497 F.2d 615 (1973), and asks

us to adopt its language that a plea bargain should only be refused if there has been a prosecutorial abuse of discretion.

*Ammidown* is no longer the law in federal courts. *E.g., United States v. Moore,* 637 F.2d 1194 (8th Cir.1981); *United States v. Harris,* 635 F.2d 526 (6th Cir.1980), *cert. denied,* 451 U.S. 989, 101 S.Ct. 2326, 68 L.Ed.2d 847; *In re Yielding,* 599 F.2d 251 (8th Cir.1979); *United States v. Stamey,* 569 F.2d 805 (4th Cir.1978); *United States v. Bean,* 564 F.2d 700 (5th Cir.1977); *United States v. Cruz,* 539 F.Supp. 231 (D.C. Puerto Rico 1982); *United States v. Munroe,* 493 F.Supp. 134 (E.D.Tenn.1980). The federal rule was changed in 1975, after *Ammidown,* and our W.Va.R.Crim.P., Rule 11 reflects those changes.

 A trial judge has discretion to refuse a plea bargain, if he follows the procedure prescribed in that rule. *State ex rel. Roark v. Casey,* 169 W.Va. 280, 286 S.E.2d 702 (1982). This was done for Guthrie; he withdrew his plea and had a trial.

### VI.

### INSTRUCTIONS

 Guthrie's final allegations of error relate to instructions he offered that the court refused to give. Defendant's Instruction 27A[9] was rejected because it was not an accurate statement of the law. The court reasoned that an instruction on delay in presentment to a magistrate is incorrect if it states that delay alone is sufficient to infect a confession. The court recognized that delay was a factor in the totality of circumstances that may be considered in assessing whether a confession was voluntarily made and thus admissible. In *State v. Persinger, supra,* Section I of this opinion, our syllabus point indicates that delay is an important factor in the totality of circumstances test, but the language of the text acknowledges that in egregious situations delay alone may result in an inadmis-

**9.** Defendant's Instruction 27A:

 "The Court instructs the jury that the law requires the police to have taken George Guthrie without an unreasonable delay before a magistrate in the county where he was arrested, and if you the jury should find that the delay by C.M. Blizzard in taking George Guthrie before a magistrate was unreasonable, then you may disregard the statement in its entirety."

sible confession. Yet, we believe this instruction was improper because it did not require that the delay be for the purpose of eliciting a confession. *See* discussion in Section I, *supra*. Our decision that the confession is inadmissible shall eliminate this problem at retrial.

Guthrie also complains about the court's refusal to give his Instruction 33:

The court instructs that if you believe that John Corprew may have fired the shot that killed David Cloud, then you must find George Guthrie not guilty.

The judge ruled that it was repetitive, and therefore, he refused to give it. He gave Defense Instruction 32:

The Court instructs the jury that if you have reasonable doubt as to who fired the shotgun in this case, then you must find George Guthrie not guilty.

Both instructions refer to doubt about who fired the murder weapon, and it was not reversible error to refuse the repetitious one. *State v. Meadows*, 172 W.Va. 247, 304 S.E.2d 831 (1983).

Reversed and remanded.