**UNITED STATES of America, Appellee,**

v.

**Thomas ESCOBAR NOBLE, Defendant, Appellant.**

**No. 80–1099.**

United States Court of Appeals, First Circuit.

Submitted Feb. 2, 1981.

Decided June 30, 1981.

---

Jose C. Aponte, Jr., Santurce, P.R., on brief for defendant, appellant.

Raymond L. Acosta, U. S. Atty., and Justo Arenas, Asst. U. S. Atty., San Juan, P.R., on brief for appellee.

Before CAMPBELL, BOWNES and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Thomas Escobar Noble pleaded guilty in the district court to having conspired to possess with intent to distribute and to distribute 500 pounds of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. He was sentenced to a prison term of one year and one day, and a special parole term of two years. On appeal, Escobar argues that the district court abused its discretion by rejecting a plea agreement that would have allowed him to plead guilty to the lesser crime of possession of marijuana. 21 U.S.C. § 844(a). He also contends that the prison term imposed by the district court was too harsh, and that the special parole term was not authorized by the statute. Except as to the last issue, we affirm the district court.

Escobar initially pleaded not guilty to a marijuana conspiracy charge, which is a felony carrying a maximum sentence of five years in prison and a fine of $15,000. 21 U.S.C. §§ 841(a)(1), (b) and 846. Thereafter he reached an agreement with the United States Attorney to plead guilty to simple possession of marijuana, a misdemeanor carrying a maximum sentence of one year in prison and a $5,000 fine, 21 U.S.C. § 844(a), in exchange for dismissal of the felony indictment. The district court rejected the plea bargain after holding a hearing on the proposed change of plea on November 16, 1979. At the hearing, the Assistant United States Attorney stated that Escobar had no criminal record. He went on to say that Escobar had "played a relatively minor role in this conspiracy," and had,

"no pecuniary interest at all. I could be wrong, but as far as I know he didn't. He was asked to watch who he didn't know was a DEA agent during a transaction in which payment was going to be made. And he was asked to do this by Mr. Guillermo De Leon Sarraga. And basically he was at a meeting in the Bounty Steak House where he received instructions. I don't recall if he said anything, he may have said something, but he was given instructions there to watch Agent Jimenez who was working in an undercover capacity at that time.

"And later on, in Marine Towers where transaction was going to be of money was to be transferred for marijuana, and in fact twelve thousand dollars was transferred and we have that in evidence. Mr. Thomas Escobar Noble was outside watching Agent Jimenez and that basically is, he was not armed, and that is his participation."

Noting that one of the three central figures in the conspiracy had been sentenced to fifteen months in prison, the government expressed its concern "that with all due respect to the Court, [it would be] almost a mischarge of justice if a relatively minor character was to serve two to three years . . . ." For his part, Escobar's attorney reemphasized his client's minimal role in the conspiracy and asserted that, if convicted of a felony, rather than a misdemeanor, Escobar would lose his present job and be unable to pursue a legal career upon completing his final year of law school.

The district judge refused to allow dismissal of the felony charge, indicating he did not wish his hands to be tied, and referred to another case where he felt he had received misinformation about the defendant's degree of involvement.

Escobar commenced trial, but on the second day he reluctantly pleaded guilty to the felony on which he was indicted. On several occasions before sentencing he asked to be allowed to substitute a lesser plea in accordance with the agreement. The court adhered to its initial position in

an order issued January 16, 1980, denying the request ("such agreement unduly restricted the Court's discretion in sentencing") and went on to note that,

"such proposal was not shown to be related to a prosecutorial purpose such as, insufficiency of evidence, doubt as to the admissibility of certain evidence, a need to bring another felon to justice, or other similar consideration. It should not go without saying that the need to bring other felons to justice was the prosecutorial purpose for which other persons involved in the offense were not brought to trial."

Escobar now argues that the rejection of his plea agreement was an abuse of discretion.

Under Fed.R.Crim.P. 11(e)(2), a district court may, as a matter of discretion, accept, reject or defer a decision upon a proposed plea agreement. *See In re Arvedon*, 523 F.2d 914 (1st Cir. 1975); *United States v. Bednarski*, 445 F.2d 364 (1st Cir. 1971). *See also* Advisory Committee Notes to Fed.R.Crim.P. 11(e). The issue Escobar raises is whether a district court abuses this discretion by rejecting a plea agreement in order to leave open the possibility of imposing a higher sentence than would have been permitted under the plea agreement.

■■■ We think the answer must be "No" in these circumstances. This is not a case where acceptance of the plea agreement is both reasonable and necessary to secure a legitimate and important prosecutorial interest. *See United States v. Ammidown*, 497 F.2d 615 (D.C.Cir.1973)(plea bargain enabled prosecutor to obtain critical testimony needed to convict an accomplice, and without seriously weakening sanctions that would be imposed on defendant). Nor

is this a case involving some other independent consideration so compelling as to necessitate acceptance of the plea. As the prosecutor admitted to the court, he was prepared to prove, beyond a reasonable doubt, that Escobar was guilty of the felony with which he had been charged. *Compare United States v. Greater Blouse, Skirt & Neckwear Contractors Association*, 228 F.Supp. 483 (S.D.N.Y.1964) (allowing prosecution motion to dismiss indictment on basis of insufficiency of evidence). In addition, there is no suggestion that the prosecutor hoped to use information obtained from Escobar to help convict other defendants. *Compare United States v. Cowan*, 524 F.2d 504 (5th Cir.1975), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976). The only justification offered for the proposed plea agreement was that the possible sentence under a felony conviction "would not be just" for a defendant who "in this case played the least role," had no prior record and wished to pursue a legal career. The court, however, was free to impose a light sentence—indeed it could have suspended all imprisonment—on the felony, just as on the proposed misdemeanor. In fact, the sentence it finally did impose was, for all practical purposes, little different from what it could have imposed under a misdemeanor charge. To be sure, the collateral consequences of a felony conviction are harsher than for a misdemeanor, but unfortunately for defendant the crime he committed was in point of fact a felony.[1] It is the particular function of the court, not the prosecutor, to say the last word about the justice of a sentence. *See Koski v. Samaha*, 648 F.2d 790 at 796–797 (1st Cir. 1981). We do not consider the case before us as comparable to a refusal of a prosecutor's request to withdraw an indictment. In the latter

---

1. It is not clear whether Escobar Noble was even guilty of the proposed misdemeanor, simple possession of marijuana. His criminal conduct apparently involved facilitating a drug transaction by acting as a lookout. There seems to be no evidence of actual possession or of ownership, dominion or control over the contraband or premises. *See United States v. Love*, 599 F.2d 107, 109 (5th Cir. 1979); *United States v. Salinas-Salinas*, 555 F.2d 470, 473–74

(5th Cir. 1977). "Mere presence in the area where the contraband is discovered or mere association with the person who does control the contraband or the property where it is concealed does not support a finding of possession." *Love*, 599 F.2d at 109. *See United States v. Bagby*, 451 F.2d 920, 930–31 (9th Cir. 1971); *Araujo-Lopez v. United States*, 405 F.2d 466, 467 (9th Cir. 1969).

instance, the prosecutor is exercising a power traditionally associated with prosecutors, to determine what charges to press against a particular individual. *Id.* There is no reason for the judge to interfere unless the public interest is threatened. Plea bargains, however, go to the traditionally judicial function of determining what penalty to impose. The prosecutor here was unwilling to withdraw the charge, and to accept such responsibility as would have accompanied such action. Moreover, he presented no prosecutorial interests—obtaining evidence, avoiding a prosecution of uncertain success, or conserving prosecutorial resources—that would have been furthered by the plea bargain. The bargain he proposed was thus intended only to control sentencing, a matter ordinarily within the discretion of the court. Under such circumstances a court has wide latitude to reject a plea bargain. *Compare United States v. Bean*, 564 F.2d 700 (5th Cir. 1977). The district court therefore acted within the scope of its discretion in refusing to accept the proposed plea agreement.

We dispose of Escobar's remaining claims more briefly.

■ Escobar contends that the district court erred in sentencing him to prison, rather than to a term of probation. Escobar pleaded guilty to charges of having conspired to possess and distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. Section 846 provides that,

> "Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

21 U.S.C. § 846. The maximum punishment prescribed for Escobar's violation of section 841(a)(1) was "a term of imprisonment of not more than 5 years, a fine of not more than \$15,000, or both." 21 U.S.C. § 841(b)(1)(B). His sentence of one year and one day is within the statutory maximum. There is no suggestion that the district court considered impermissible factors,

ignored the unique circumstances of the case, or otherwise acted improperly in fixing sentence. We therefore uphold the court's sentence. *Compare United States v. Miller*, 589 F.2d 1117, 1138–39 (1st Cir. 1978) *and United States v. Foss*, 501 F.2d 522, 527–29 (1st Cir. 1974) *with United States v. Wardlaw*, 576 F.2d 932, 937–39 (1st Cir. 1978).

■ Escobar further argues that the district court's imposition of a special parole term of two years was not authorized by statute. In *Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980), the defendant, like Escobar, was convicted of violations of 21 U.S.C. §§ 841(a)(1) and 846, and was sentenced pursuant to 21 U.S.C. § 841(b)(1)(B), which requires that "[a]ny sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a special parole term of at least 2 years in addition to such term of imprisonment . . . ." The question presented to the Supreme Court in *Bifulco* was

> "whether § 406 [21 U.S.C. § 846], which states the penalty for conspiracy as "imprisonment or fine or both,' but limits maximum punishment by reference to the penalty provisions of the substantive target offense, authorizes the imposition of a special parole term where that sanction is included within the penalty provisions of the target offense."

447 U.S. at 385, 100 S.Ct. at 2251. The Court answered in the negative. Consistent with *Bifulco*, we vacate that portion of Escobar's sentence imposing a special parole term of two years.

*Affirmed in part; vacated in part.*