**UNITED STATES of America**

v.

**Carlos Rodriguez CRUZ.**

**Cr. No. 81–189(PG).**

United States District Court,
D. Puerto Rico.

May 4, 1982.

Jose A. Quiles and Jose Aguayo, Asst. U. S. Attys., Hato Rey, P. R., for plaintiff.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

There are pending before the Court two motions filed in relation to defendant Carlos Rodríguez Cruz, to wit: (1) Motion to Dismiss Information and Proceed to Trial in Original Indictment, dated December 23, 1981; and (2) Motion in Opposition to Motion and for Dismissal of Information, dated January 7, 1982. A brief history of the case is appropriate at this time.

On June 26, 1981, a complaint was filed before a U. S. Magistrate of this Court charging Carlos Rodríguez Cruz (Rodríguez) and three other co-defendants with a violation of Title 21 U.S.C. 841(a)(1) and 18 U.S.C. 2, 111, 1114.[1] Subsequent proceedings in the District Court produced a two-count indictment, filed on July 8, 1981.[2] On August 20, 1981, the case is set for trial for September 21, 1981. A series of motions and hearings on preliminary matters transpired after the case was set for trial, being one of those motions a motion by defendant Flecha Salcedo for a mental competency hearing, filed on September 18, 1981, which necessarily postponed the trial setting of all defendants since a previous motion for severance had been denied by the Court. The mental competency hearing was held and on October 11, 1981, the Court ordered defendant Flecha Salcedo to be committed to the custody of the Attorney General pursuant to Title 18 U.S.C. 4246.[3]

1. The co-defendants are Francisco Medina Negrón, Humberto Flecha Salcedo and Wilfredo Nieves Hernández. The Opinion and Order only covers the specific case of defendant Rodríguez.

2. Count One reads in its pertinent part:
"On or about June 26, 1981, in the District of Puerto Rico ... [all four defendants named] aiding and abetting each other, did unlawfully, knowingly, willfully and intentionally possess with the intent to distribute approximately 125 grams (net weight) of cocaine, a Schedule II Narcotic Drug Controlled Substance, all in violation of Title 21, U.S.C., Section 841(a)(1) and Title 18, U.S.C., Section 2."
Count Two only charged defendant Flecha Salcedo with a violation of 18 U.S.C., Sections 111 and 1114.

3. Section 4246 of Title 18 provides that after a trial court has received a motion from the United States Attorney or defense counsel requesting a judicial determination of defendant's mental competency, a hearing is held upon due notice, and the court receives evidence by at least one qualified psychiatrist and a finding is

In the meantime, the other co-defendants, including Rodríguez, plea bargained their cases with the U. S. Attorney's Office. Defendants Nieves Hernández and Medina Negrón both plead guilty to Count One of the Indictment on October 19, 1981, and were subsequently sentenced on December 11, 1981, to four and eight years imprisonment, respectively, and each received a special parole term of three years.

The case of Rodríguez was different. On October 19, 1981, instead of pleading guilty to the indictment, the U. S. Attorney filed a one-count information charging Rodríguez with simple possession of cocaine.[4] During the procedure followed pursuant to Rule 11 of the F.R.Cr.P., the Assistant U. S. Attorney present in court and the attorney for Rodríguez informed the Court that a plea agreement had been reached in the case. The extent of said plea bargaining, as reflected in the record, is that in exchange for defendant's plea the government agreed to file an information charging a misdemeanor drug violation, and at the time of sentenc-

ing recommend to the Court that the defendant be placed on probation pursuant to 844(b)[5] and that the felony indictment be dismissed.

Following the recital for the record of the plea agreement, the Court advised the defendant, in so many words, that it would follow the recommendation of the government at the time of sentencing to dismiss Count One of the Indictment,[6] but that as to the sentence to be recommended, the Court would not know what it would be doing until it received the pre-sentence report, and, therefore, the Court was not bound[7] by said recommendation and it could impose maximum punishment under 844(a).[8] Thereafter, the Court accepted the plea of guilty, requested a pre-sentence report and set the case down for sentence on December 11, 1981.[9]

After the Court had sentenced the other two co-defendants the Court refused to sentence this defendant in what it felt was doing an injustice in the case. The Court, after receiving a complete pre-sentence re-

---

entered that the accused is or was mentally incompetent; then "... the court may commit the accused to the custody of the Attorney General ... until the accused shall be mentally competent to stand trial or until the pending charges against him are disposed of according to law ...".

4. The Information reads in its pertinent part: "On or about June 26, 1981, in the District of Puerto Rico, ... Carlos Rodríguez Cruz, the defendant herein, aiding and abetting others not charged in this Information, did knowingly and intentionally possess cocaine, a Schedule II Narcotic Drug Controlled Substance, without having obtained a valid prescription or order from a practitioner... All in violation of Title 21 U.S.C. Section 844(a)(b) and Title 18 U.S.C. Section 2."

5. The highlights of Section 844(b) are that it is applicable only to persons who have not previously been convicted of violation to the narcotics laws of the United States; that the Court may, upon a plea of guilty and with the consent of the person, without entering a judgment of guilty, defer further proceedings and place him/her on probation for a period not to exceed one year; and that if the person complies fully with the terms of the probation, the Court shall discharge such person and dismiss the proceedings against him/her. No stigma of conviction shall bear upon said person.

6. F.R.Cr.P. 11(e)(1)(A), which states:
"(1) In General. The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:
"(A) move for dismissal of other charges; or...."

7. F.R.Cr.P. 11(e)(1)(B), which states:
"(1) * * *
"(A) * * *
"(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or...."

8. Title 21 U.S.C. 844(a) provides in part: "Any person who violates this subsection shall be sentenced to a term of imprisonment of not more than one year, a fine of not more than $5,000.00, or both...".

9. Transcript of proceedings held on October 19, 1981.

port, realized that this defendant was the midpoint of the criminal activity that culminated in the arrest and charge of the four defendants. He was the one that made possible the transaction by bringing together the various participants, thus, inuring to himself a $1,000.00 profit. The official version of the transaction reveals that the original demand was for one fourth kilogram of cocaine for $16,000.00, but that the defendants Medina and Rodríguez were able to produce one eighth kilogram of cocaine of excellent quality for *only* $10,000.00. Since the amount of cocaine was not what had been promised, the undercover agents did not accept the package containing the narcotics and instead negotiated with Medina (defendant's partner) for the delivery of the full eight ounces of cocaine the next day. Thereafter, the arrest of the defendant was effectuated after a high-speed chase ensued, and weapons and the cocaine were thrown out of the car by defendant.

The thorny issue of this case in its present posture is whether the Court rejected the plea agreement and must now proceed under Rule 11(e)(4) [10] upon defendant's insistence on his plea of guilty to the Information, or can the Court, in its inherent power to see that justice is done, vacate defendant's plea over his objection, order the Information filed dismissed, and proceed to try him on the original Indictment.

This is not the customary case of a defendant entering a plea of guilty, and upon being sentenced, moving the Court at some later date to vacate his sentence and allow him to withdraw his plea for any number of reasons not relevant herein. Nor is this the case of a defendant moving the Court under Rule 32(d) F.R.Cr.P.[11] to withdraw his plea. To the contrary, the gist of Rodríguez' motion of January 7, 1982, is to maintain his plea of guilty and have another Judge of this Court sentence him pursuant to the plea agreement.

Upon review of the record of this case, Rodríguez' pre-sentence report, the procedures followed by the Court during the hearings held on October 19, and December 11, 1981, the Court is of the opinion that it has sound reasons for rejecting the plea agreement, vacating the plea of guilty, dismissing the Information, and setting the case down for further proceedings on the Indictment before another Judge of this Court.[12]

The cornerstone for our ruling was laid down in 1971 when the Supreme Court decided the case of *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). The Court, speaking thru the Chief Justice, stated at page 262: "There is, of course, no absolute right to have a guilty plea accepted.... A court may reject a plea in exercise of sound judicial discretion". Appropriately, when a court is going to vacate a plea of guilty previously entered it cannot exercise its judicial discretion in a vacuum for "(t)his phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure

---

10. Rule 11(e)(4) F.R.Cr.P., states:
   "(4) Rejection of a Plea Agreement. If the court rejects the plea agreement, the court shall, *on the record, inform the parties of this* fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw his plea, and advise the defendant that if he persists in his guilty plea or plea of nolo contendere the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement."

11. Rule 32(d) F.R.Cr.P., states:
   "(d) Withdrawal of Plea of Guilty. A motion to withdraw a plea of guilty or of nolo con-tendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

12. As things stood on December 11, 1981, the case was re-assigned to another Judge for sentencing upon the guilty plea to the Information. Thereafter, the two motions being considered were filed. The two Judges involved, after consultation, understood that it was in the best interest of justice that the Judge with the most intimate knowledge of all the trifles of the case should proceed to decide said motions.

the defendant what is reasonably due in the circumstances.". *Santobello, supra,* at 262, 92 S.Ct. at 499.

■ The record before the Court paints a picture of a defendant getting off with a very light sentence when the circumstances of the case tend to indicate that a miscarriage of justice is in the making, not only to the public, but also to the two co-defendants who plead to felony charges. This Court does not shun away from plea bargainings and, on the contrary, recognizes the many advantages it has for the whole criminal justice system. But, that does not mean that the Court must stand by idle, with arms folded, and allow each bargain brought before it without inquiring whether the totality of the circumstances and the rights and expectations of the various components of the system are accounted for.

■ The duty required of a court in pondering the decision to accept or reject a bargain, or as in the specific circumstances of this case, to vacate a plea of guilty already accepted, has been limpidly stated in the case of *U. S. v. Munroe,* 493 F.Supp. 134 (E.D.Tenn., 1980). Speaking in terms of encouraging plea bargains, the court, at page 136, stated:

"I can do that, of course, only as I am satisfied, after having reviewed thoroughly all the relevant factors, that the rights of the defendant are protected and that the interest of the public in the effective administration of criminal justice will be served by the acceptance of the plea agreement." (Citations omitted; underlining ours)

"In other words, I visualize my obligation to be to supervise the fairness of the bargain [citations omitted], and I shall intervene in a bargain arranged between the prosecution and a defendant only when I conclude the bargain exceeds the proper bounds.... Among many others, one sound reason which has been given for a judge's rejection of a plea bargaining is that the result will be the defendant's receiving too light a sentence under the circumstances of the case."

In *U. S. v. Bednarski,* 445 F.2d 364 (1 Cir., 1971) the basic question presented was whether the court was required to accept or not a plea of guilty. (Defendant denied knowledge of the falsity of his understated tax at the time of filing.) The Court found no requirement in Rule 11 that obliges a court to accept a guilty plea merely because it was warranted in so doing. Equally important the Court also recognized that the public must also be taken into consideration in contemplating the conviction of a person. *Bednarski* teaches us that "... the public might well not understand or accept the fact that a defendant who denied his guilt was nonetheless placed in a position of pleading guilty and going to jail.". *Ibid.,* at 366.

It can well be argued, with equal force, that the public might well not understand or accept (a matter of grave concern in this case in light of the heavy sentences imposed upon parties *in-pari-delicto*) the fact that a defendant that participated as fully in the criminal enterprise as the other co-defendants was nonetheless placed in a much more favorable position of pleading to a misdemeanor and being recommended for probation for a maximum term of one year, with the concomitant negativeness of criminal record. In *U. S. v. Bean,* 564 F.2d 700 (5 Cir., 1977), as in our case, the Court's decision that the plea bargain was going to result in the defendant's receiving too light a sentence under the circumstances of the case, was found to be a sound reason for the judge's refusing to accept the agreement. Therein, the district judge to whom the plea bargain was presented found that it did not provide for the imposition of a sentence commensurate with the offense and elected to exercise reasonable discretion in rejecting to plea bargain in order to impose an appropriate sentence for defendant. *Ibid.,* at 704.

The Court of Appeals for the First Circuit has reiterated the well-settled proposition that a court may reject a plea of guilty in the exercise of sound judicial discretion. *In Re Arvedon,* 523 F.2d 914 (1 Cir., 1975), the District Court refused to accept the plea of guilty upon a Rule 20 transfer from the

Middle District of Florida to the District of Massachusetts after it found out that one of the driving motives for the plea was defendant's resistance to return to Florida. The District Court did not even inquire into defendant's guilt or innocence or whether there was a factual basis for the plea. In the course of its Opinion the Circuit Court reviewed the merits of the case starting ". . . with the well settled proposition that a court may reject a plea of guilty in the exercise of sound judicial discretion.". *Ibid.*, at 916. But, this is as far as the semblance of the cases stretches, for here, the Court examined Rodríguez under Rule 11 and it was not until the whole picture of the case was presented to it by means of the pre-sentence report that the Court considered that any sentence imposed under the plea agreement as formulated abetted injustice. That serious consideration was given to Rule 11 is abundantly clear from the Court's manifestations.

■ One additional problem confronts Rodríguez at this stage. He has not shown that if the Court refuses to allow him to maintain his plea of guilty as entered on October 19, that that would constitute an abuse of discretion. Mere allegations that he bargained for a misdemeanor information with a recommendation to be made for a probationary period; that the pre-sentence report supported such a recommendation; and that, otherwise, he has a clear record, do not carry the day for him in his heavy burden to demonstrate the Court's abuse of discretion. *U. S. v. Biscoe*, 518 F.2d 95 (1 Cir., 1975).

The Court finds further support in its decision to vacate the plea perched on Rule 11 itself. The 1974 amendments to Rule 11 introduced for the first time Subdivision (e) to provide for a plea agreement procedure to give recognition to the propriety of plea discussions; to bring the existence of a plea agreement out into the open in court; and to provide methods for acceptance or rejection of a plea agreement.[13] The following year the Supreme Court proposed extensive amendments to Rule 11(e), which were extensively debated in the Judiciary Committee of the House of Representatives.[14] It has been made patently clear that "(t)he procedure is not mandatory; a court is free not to permit the parties to present plea agreements to it. . . . Proposed Rule 11(e) permits each federal court to decide for itself the extent to which it will permit plea negotiations to be carried out within its own jurisdiction. No court is compelled to permit any plea negotiations at all. Proposed Rule 11(e) regulates plea negotiations and agreements if and to the extent that the court permits such negotiations and agreements.". *Ibid.*, at 678–679.

■ The prosecutor has unfettered discretion in initiating prosecutions or in entering into plea bargains with defendants that may include filing charges of lesser included offenses. But, once the Court has come into the picture, it cannot abdicate its views of the public interest involved for those of the prosecutors. Given the non-mandatory character of Rule 11(e), the Court does not contravene the spirit of the Rule by vacating defendant's plea.[15]

■ Mr. Rodríguez Cruz' motion must also be denied for it flies in the face of *U. S. v. Escobar Noble*, 653 F.2d 34 (1 Cir., 1981). In *Escobar Noble*, the District Court did not allow the defendant to plead guilty to a lesser included offense of simple possession of marihuana, 21 U.S.C. 844(a), when the indictment charged a conspiracy to possess with intent to distribute and to distribute 500 pounds of the drug. After the defend-

---

13. F.R.Cr.P. 11, Advisory Committee Note (1974).

14. U.S.Code Cong. & Admin.News 1975, pp. 674 et seq. At Note 7a, the Advisory Committee on the Rules stressed during its testimony that the rules do not mandate that a Court permit any form of plea agreement to be presented to it.

15. In *U. S. v. Bean, supra*, the Circuit Court analyzes the 1974 Amendments to F.R.Crim.P. 11 and how they did not do away with the Court's discretion to refuse a plea bargain because the agreement was against the public interest.

ant plead guilty and was sentenced upon his plea to the felony, he appealed alleging that the Court had committed an abuse of discretion "... by rejecting a plea agreement in order to leave open the possibility of imposing a higher sentence than would have been permitted under the plea agreement.". *Ibid.*, at 36. As was the case in *Escobar Noble*, the present case "... is not a case where acceptance of the plea agreement is both reasonable and necessary to secure a legitimate and important prosecutorial interest.". *Ibid.*, at 36. No independent or compelling reasons are adduced to impress upon the Court the necessity to accept the plea.[16] On the contrary, the portrayal that the presentence report makes of this defendant is one of complete involvement in a drug transaction where not only he was to derive a financial gain, but also the amount of drugs that was to change hands was not minute.

■ But more important, the summary of the evidence in the record [17] reveals without a doubt that this defendant was aiding and abetting his co-defendants in the possession of one eighth kilogram of cocaine, an amount considerably in excess of what can be reasonably expected to be the basis of a misdemeanor charge. As a matter of fact, the agreed amount of cocaine to be delivered was one fourth kilogram, or roughly, half a pound. Certainly, then, this defendant was not aiding and abetting in the commission of a misdemeanor, but was fully enmeshed in the perpetration of a felony, and therefore, he cannot be found guilty by this Court of the criminal conduct typified in the Information.[18]

For the reasons stated hereinabove, the Government's motion of December 23, 1981, is hereby GRANTED; defendant's motion of January 7, 1982, is hereby DENIED. The case is returned to the Clerk for referral to the appropriate Judge, for trial setting.

IT IS SO ORDERED.

16. See page 9, *ante.*

17. Transcript of hearing held on December 1, 1981, at pp. 3–5.

18. *U. S. v. Escobar Noble, supra,* at 36, n. 1.